RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRENDA MURPHY,

*Plaintiff-Appellant,*

*v.*

No. 06-5897

LINDA COCKRELL,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 05-00229—Karl S. Forester, District Judge.

Submitted: September 14, 2007

Decided and Filed: October 4, 2007

Before: MARTIN, GUY, and CLAY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Ned B. Pillersdorf, Joseph R. Lane, PILLERSDORF, DeROSSETT & LANE, Prestonsburg, Kentucky, for Appellant. Grover A. Carrington, Farrah Williams Ingram, WHITE PECK CARRINGTON, Mt. Sterling, Kentucky, for Appellee.

MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined. GUY, J. (p. 9), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Brenda Murphy brought suit against Linda Cockrell, as an individual and in her official capacity as Montgomery County, Kentucky, Property Valuation Administrator (PVA), alleging violations of the First, Fourth, and Fourteenth Amendments and wrongful discharge arising out of her dismissal from the Montgomery County PVA office. Murphy now appeals the district court's grant of summary judgment in favor of Cockrell only as to her First and Fourteenth Amendment claims and her wrongful discharge claim. For the reasons that follow, we REVERSE the district court's grant of summary judgment on Murphy's First Amendment claim and wrongful discharge claim, and AFFIRM summary judgment as to the Fourteenth Amendment claim.

1

I.

The previous Montgomery County PVA officially retired on May 31, 2004. At that time, both Murphy and Cockrell had worked on the PVA staff for many years. Cockrell was Chief Deputy PVA while Murphy was a deputy PVA. On July 8, 2004, Cockrell was nominated as the Republican Party candidate for PVA, and subsequently, on July 19, 2004, Governor Ernie Fletcher appointed her as interim PVA. Shortly thereafter, Murphy was nominated as the Democratic Party's candidate for PVA.

Upon her appointment by Governor Fletcher to interim PVA, Cockrell moved Murphy from the front office to the back office, where she would not have public contact. Cockrell also asked Murphy to not take any calls at the PVA office related to her real estate business. Cockrell requested Murphy return her office key so that she could be sure that Murphy was not using PVA resources for campaign purposes.

Apparently, the campaign was a spirited one, as both parties greatly coveted the title of Montgomery County Property Valuation Administrator and all of the accoutrements that accompany such a position. Not surprisingly, the campaign created a great deal of tension between the parties at the PVA office. Apparently, Murphy's campaign signs attacked Cockrell's perceived inexperience in real estate valuations and also found fault with Cockrell's change of party allegiance shortly before her nomination as the Republican candidate.

On November 2, 2004, Cockrell was elected Montgomery County PVA. Two days later, apparently in accord with what must be a very efficient and businesslike office, Cockrell sent Murphy a letter stating only the following: "Your services are no longer required, effective immediately." Murphy appealed her termination to the Kentucky Personnel Board, but was unsuccessful. On June 1, 2005, Murphy filed suit in this Court pursuant to 42 U.S.C. § 1983 against Cockrell individually and in her official capacity, alleging violation of her rights under the First, Fourth, and Fourteenth Amendments. Murphy brought state law claims for wrongful discharge and outrage. She seeks compensatory damages for all lost benefits, reinstatement as deputy clerk in the PVA office, damages for pain and suffering, as well as $4 million in punitive damages and attorneys' fees.

The district court granted summary judgment in favor of Cockrell on each of Murphy's claims. Murphy appeals only three of the court's rulings on summary judgment: (1) the dismissal of her section 1983 claim for violation of her First Amendment right to free speech; (2) the dismissal of her section 1983 claim for violation of her Fourteenth Amendment right to due process; and (3) the dismissal of her state law claim for wrongful discharge.

II.

This Court reviews a district court's grant of summary judgment *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Additionally, this Court must construe the facts and draw all inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

1.     First Amendment Claim

Murphy claims her termination by Cockrell violated her First Amendment rights to free speech and free association. Murphy argues that she was terminated for expressing her political

views during her candidacy. She bolsters this argument with Cockrell's own deposition testimony stating that Murphy was not fired due to her candidacy, but rather due to the manner in which she campaigned. According to Murphy, the manner in which she campaigned was an expression of her political viewpoint, and was thus protected under the First Amendment.

"To demonstrate First Amendment protection, a public employee must show (1) that the speech at issue addresses a matter of public concern, and (2) that the employer had no overriding state interest in efficient public service that would be undermined by the speech." *Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). As it is undisputed that Cockrell terminated Murphy due to her political speech during the course of her campaign, we must determine whether Murphy's campaign speech "address[ed] a matter of public concern" and thus should be afforded First Amendment protection, and then whether Cockrell had an overriding interest in terminating Murphy to ensure that the efficient public service of the PVA office would not be undermined.

A.     Protected Speech

The issue before this Court is whether Murphy's speech during the course of her campaign was protected under the First Amendment. We have previously held that there is no protected right to candidacy under the First Amendment, and a public employee may be terminated because of the fact of that employee's candidacy. *Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997). However, we limited our holding in *Carver* to the question of whether the First Amendment recognized a government employee's ability to run for office as a fundamental right. We cautioned that the "constitutionality of dismissing Carver, a government employee, for her political beliefs, her expression of those beliefs, or her political affiliations is not before us." *Id.* at 849. Subsequently, courts within this Circuit have warned against reading *Carver* too broadly. *See Becton v. Thomas*, 48 F. Supp. 2d 747, 756 (W.D. Tenn. 1999) ("There is no question that the court found no fundamental right to political candidacy. Nevertheless, the Sixth Circuit clearly had no intention of using the *Carver* case to resolve the broader question of whether the First Amendment ever provides any protection for an individual's right to run for political office."). At least three district courts have been asked to construe the holding in *Carver*, and have come to the conclusion that dismissal because of candidacy does not violate the First Amendment, absent some showing that the termination was motivated by the employee's political beliefs, expressions, affiliation, partisan political activity, or expression of opinion. *See Greenwell v. Parsley*, 2007 WL 1406955, at *1 (W.D. Ky. 2007); *Cupit v. Charter Twp. of Mundy*, 2006 WL 2071159, at *2-3 (E.D. Mich., 2006); *Becton*, 48 F. Supp. 2d at 756.[1] In the present case, Cockrell expressly stated at deposition that if Murphy had simply remained a candidate, and not actively campaigned, she would have been allowed to keep her job. Thus, because Murphy was not terminated based on the fact of her candidacy, this case does not fall within the narrow holding of *Carver*.

---

[1]Recently, a panel of this Court also questioned the validity of *Carver*, but nonetheless determined that where an employee is fired strictly because of the fact of that employee's rival candidacy, the First Amendment has not been violated. *Myers v. Dean*, 216 F. App'x 552, 553-54 (6th Cir. 2007). Other Circuits have not followed *Carver*, rather, they have found that "[d]isciplinary action discouraging a candidate's bid for elective office represent[s] punishment by the state based on the content of a communicative act protected by the First Amendment." *Finkelstein v. Bergna*, 924 F.2d 1449, 1453 (9th Cir. 1991); *see also Stiles v. Blunt*, 912 F.2d 260, 265 (8th Cir. 1990) (recognizing "the right to run for public office"); *Flinn v. Gordon*, 775 F.2d 1551, 1554 (11th Cir. 1985) ( "[H]e certainly had a constitutional right to run for office and to hold office once elected . . . ."); *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981) (recognizing "[t]he [F]irst [A]mendment's protection of the freedom of association and of the rights to run for office, have one's name on the ballot, and present one's views to the electorate"); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (holding that the "plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials ... lies at the core of the values protected by the First Amendment"); *Magill v. Lynch*, 560 F.2d 22, 27 (1st Cir. 1977) ("It appears that the government may place limits on campaigning by public employees if the limits substantially serve government interests that are important enough to outweigh the employees' First Amendment rights." (emphasis added)).

Our task is to answer the question left unanswered by *Carver*: whether the First Amendment protects a public employee from termination based on that employee's political expressions during her own candidacy. The holding in *Carver* was based on two decisions which are of little relevance to this case. *See* 104 F.3d at 850-51 (citing *Bullock v. Carter*, 405 U.S. 134, 143 (1972), and *Clements v. Fashing*, 457 U.S. 957, 963 (1982)). In *Bullock v. Carter*, the first of these decisions, the Supreme Court held simply that states have no obligation to permit a person's name to appear on the ballot. *See* 405 U.S. at 143 ("[T]he Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. The existence of such barriers does not of itself compel close scrutiny.") Furthermore, while *Clements v. Fashing*, the second case which *Carver* relied upon, did uphold a law prohibiting certain *elected* officials from running for the state legislature, the decision expressly distinguished cases where a *civil servant* is the candidate. 457 U.S. at 972. *Carver* expanded the holdings in these two cases to fit the broader proposition that there is no fundamental right to candidacy protected by the First Amendment, but *Carver* did not, and could not under the holdings of these cases, go any further.

In addition to *Bullock* and *Clements*, *Carver* also relied on the Supreme Court's opinion in *Connick v. Myers*, in which the Court made clear that the First Amendment protects the right of public employees to participate in speech involving public affairs. 461 U.S. 138, 144-45 (1983) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." (Internal quotation marks and citations omitted)). *Connick* and its progeny protect the rights of public employees to support parties of their choice, *see*, *e.g.*, *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589 (1967), and to campaign for candidates of their choice, *Sowards*, 203 F.3d at 432 ("Support of a political candidate falls within the scope of the right of political association.").

The teaching of the above cited cases leads us to believe that if Murphy supported another candidate in the race for Montgomery County PVA other than Cockrell, such conduct would be protected by the First Amendment. In fact, if Murphy had simply actively campaigned against Cockrell, but had not become a candidate herself, her speech would be protected. Cockrell argues that the fact that Murphy was a candidate, and supported herself as such, is reason enough under *Carver* to justify Murphy's termination. We decline to extend *Carver* in such a manner. *Carver* itself distinguished cases in which candidates had been singled out or treated differently based on their political viewpoints or expressions, noting that Carver was dismissed solely based on the fact of his candidacy, not his political views. *Carver*, 104 F.3d at 852-53. We expressly recognized in *Carver* that while the mere fact of candidacy was not constitutionally protected, the expression of one's political belief still fell under the ambit of the First Amendment. Accordingly, we now hold that the fact that Cockrell fired Murphy due to Murphy's political speech during the course of her campaign — rather than the mere fact of Murphy's candidacy — is enough to trigger protection under the First Amendment. *Cf. id.*, 104 F.3d at 853 ("To hold otherwise, on the facts of this case, would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy.").

Because we hold that Murphy's speech during the course of her campaign is protected under the First Amendment, we quickly address the district court's determination that the speech used by Murphy during her campaign was not an actual expression of political beliefs, and thus not worthy of protection. The district court found that during the course of the campaign, Murphy merely called into question Cockrell's experience and party affiliation. The district court held that because such speech was not an expression of political views or beliefs, Murphy did not engage in protected conduct. Murphy argues that "the ultimate political consideration in any race is who is the better candidate . . . To suggest that the endorsement of a candidate is not the expression of a political

belief borders on the ludicrous." Appellant's Br. at 10. We believe Murphy is correct. In *Sowards*, this Court stated that "support for a political candidate falls within the scope of the right of political association." 203 F.3d at 432. Thus, if Murphy had been holding the same signs with the same message in support of another candidate running against Cockrell, her activities would have been protected by the First Amendment. The district court's ad hoc determination that the message conveyed by Murphy's campaign was not "political" enough to warrant protection is without support and is in error. As the Supreme Court stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics . . . ." *Elrod v. Burns*, 427 U.S. 347, 356 (quoting *Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)).

## B.     Overriding State Interest

Having held Murphy's speech during the course of her campaign to be protected under the First Amendment, we must now determine whether Cockrell had an "overriding state interest in efficient public service that would be undermined by [Murphy's] speech," *Silberstein*, 440 F.3d at 318, and thus was entitled to terminate Murphy.

We employ the balancing test outlined in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1983), to determine if Murphy's free speech interests outweigh Cockrell's interests in maintaining an efficient PVA office. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). Murphy's speech during the course of her campaign "will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id.* at 257-58. In order to justify Murphy's termination, her speech must "impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of [Murphy's] duties, or impair harmony among co-workers." *Akridge v. Wilkinson*, 178 F. App'x 474, 479-80 (6th Cir. 2006) (citing *Rankin v. McPherson*, 483 &.S. 378, 388 (1987)). Cockrell bears the burden of "showing a legitimate justification for discipline." *Id.*

Neither party, nor the district court, has addressed the *Pickering* balancing test. Due to the *de novo* nature of our review of this matter, we attempt to parse from the record the possible government interests in terminating Murphy, and whether those interests outweigh Murphy's First Amendment right to engage in political speech.

Our analysis under *Pickering* requires us to give full consideration Cockrell's interest in the effective and efficient fulfilment of the PVA office's responsibilities to the public. *See Connick*, 461 U.S. at 150-51. Cockrell presented no evidence that Murphy's speech impeded her duties at the PVA office. Cockrell also made no showing that Murphy's speech undermined any of the legitimate goals or missions of the PVA office, namely the accurate assessment of real property in Montgomery County, the conveying of deeds, and the adjustment of tax bills based on property assessments. The only apparent negative impact of Murphy's campaign was the deterioration of her relationship with Cockrell, and the resultant tension in the PVA office.

The question then becomes whether Cockrell's interest in reducing the tension in the PVA office outweighed Murphy's First Amendment right to express her political views. As has previously been decided by this Court, supporting a political party or candidate of one's choosing is a fundamental right protected under the First Amendment, *Sowards*, 203 F.3d at 432, and as such, it is impermissible to allow a superior to terminate an employee simply because tensions that did not impede the functions of the workplace arose over such protected speech. *Scarbrough*, 470 F.3d at 258. It would contravene the intent of the First Amendment to permit Cockrell to dismiss Murphy due to her speech and political beliefs in this way. *Id.*

Because it is not disputed that Cockrell terminated Murphy because of Murphy's political speech during the campaign, which we now hold was protected political expression under the First Amendment, and no countervailing governmental interest can be found, Murphy has stated a valid claim under section 1983 for violation of her First Amendment rights.

### C.      *Elrod-Branti* Exception

Cockrell argues that even if Murphy was discharged because of her political beliefs and expressions, she is entitled to qualified immunity under the *Elrod-Branti* exception. We find that Murphy was not in a confidential or policymaking position as deputy PVA, and thus does not fall under any category of the *Elrod-Branti* exception.

The Supreme Court in *Elrod*, 427 U.S. at 367, and *Branti v. Finkel*, 445 U.S. 507, 518 (1980), held that "certain public employees in confidential and policymaking positions may be dismissed on the basis of their political affiliation without violating the First Amendment." *Sowards*, 203 F.3d at 435. In order to determine whether Murphy's position as deputy PVA falls under the *Elrod-Branti* exception, this Court must "look beyond the mere job title and examine the actual duties of the specific position." *Id.* In *McCloud v. Testa*, four categories of positions that fall under the exception were identified:

> **Category One**: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two position or confidential advisors;
>
> **Category Four**: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

97 F.3d 1536, 1557 (6th Cir. 1996)(footnotes omitted)(emphasis in original).

Only the first two categories are relevant here. Cockrell argues that her position obviously falls within Category One as a political position defined by state law, and that Murphy's position falls into Category Two because Cockrell delegated a significant portion of her discretionary duties to Murphy in her role as deputy PVA. While Cockrell's position may very well fall within Category One — a proposition that is far from conclusive — Murphy's position does not fall within Category Two.

In *McCloud*, this Court found the following positions within a county auditor's office fell outside the *Elrod-Branti* exception: (1) real estate division administrator, (2) personal property tax division administrator, and (3) estate tax administrator. Specifically, *McCloud* found that the real estate division administrator's duties consisting of the valuation of real estate for property tax purposes fell outside any of the four categories listed above. *McCloud* also found that where the

personal property tax administrator's duties consisted of distributing, collecting, and auditing property tax returns, those duties also fell outside of the exception. These positions arguably contain more discretionary duties than that of Murphy's position as deputy PVA. Murphy was responsible for deed conveyances, tax exonerations, and tax assessments. Many of these responsibilities are governed by Kentucky statute. *See, e.g.*, K.R.S. § 132.810; K.R.S. 133.110; K.R.S. 133.170. A deputy PVA's discretionary authority merely involves applying the rules and standards set forth in these statutes. Murphy was not in a confidential or policymaking position as deputy PVA; her position was more akin to those found to fall outside the exception in *McCloud*. Therefore, we find that Cockrell is not entitled to qualified immunity under the *Elrod-Branti* exception.

### 2.    Fourteenth Amendment Claim

The district court held on summary judgment that Murphy had no reasonable expectation of continued employment in her position with the PVA's office, and thus had no protected property interest under the Fourteenth Amendment. The district court reached this conclusion based on the fact that Murphy was an at-will employee who, according to Kentucky law, could "be discharged for any reason, including a bad reason, no reason or for political reasons . . . ." *Martin v. Correction Cabinet of Commonwealth*, 822 S.W.2d 858, 860 (Ky. 1991). Accordingly, her section 1983 claim for violation of her rights under the Fourteenth Amendment was dismissed.

The district court was correct in its determination.

### 3.    State Law Claim for Wrongful Discharge

The district court's decision dismissing Murphy's wrongful discharge claim relied on *Bennet v. Jones*, 851 S.W.2d 494 (Ky. App. 1993). In *Bennett*, it was held that a deputy PVA has no claim for wrongful discharge when the PVA fires her for announcing her intent to run for the PVA position. This was based on Kentucky's policy that an unclassified at-will employee may be discharged for any reason, including political reasons. *See Martin*, 822 S.W.2d at 860. Additionally, Kentucky statutory law provides that a deputy PVA serves at the pleasure and discretion of the PVA. K.R.S. § 139.590(8). Because no contrary statutory authority was raised, the district court found that there was no policy in Kentucky protecting a deputy PVA from termination when that person decides to run for the PVA position.

However, this analysis ignores the fact that Murphy has shown a protected United States constitutional right under the First Amendment to express her political beliefs during the course of her campaign, as discussed above. In Kentucky, "[a]n at-will employee has a cause of action for wrongful discharge when the discharge is contrary to fundamental and well-defined public policy as evidenced by constitutional or statutory provision." *Stargle v. Pamida*, 2007 WL 2029499, at *2 (W.D. Ky. 2007) (citing *Boykins v. Hous. Auth. of Louisville*, 842 S.W.2d 527, 529 (Ky. 1992)). Because Murphy has shown a fundamental policy under the United States Constitution against the discharge of public employees for voicing their political beliefs – as distinguished from merely becoming a candidate – she may maintain a claim for wrongful discharge.

### III.

Based on the foregoing reasons, we REVERSE the district court's decision on summary judgment dismissing Murphy's section 1983 claim for violation of her First Amendment rights, AFFIRM the district court's decision dismissing Murphy's Fourteenth Amendment claim, and REVERSE the district court's grant of summary judgment on Murphy's wrongful discharge claim. We REMAND for further proceedings in accordance with this ruling.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

RALPH B. GUY, JR., concurring in part and dissenting in part. I agree that summary judgment was properly granted to the defendant on the plaintiff's due process claim, but respectfully dissent from the reversal of the decision granting summary judgment to the defendant on the First Amendment claim under 42 U.S.C. § 1983 and the state law wrongful discharge claim.

At the heart of my disagreement is my view that the evidence presented by Murphy herself demonstrated that her discharge was on account of her rival candidacy and not for her political beliefs or affiliations. Indeed, it was Murphy who testified that Cockrell not only told her to call the nominating committee and back out of the race, but also told her that she could keep her job if she dropped her candidacy. Cockrell conceded that they had candidly discussed the fact that only one of them would probably still be employed in the PVA office once the election was over. Notwithstanding evidence that the race was contentious and that Cockrell took umbrage at Murphy's campaign literature impugning her experience and character, it is plain that Murphy's rival candidacy was the motivation for the discharge. This case, therefore, cannot be distinguished from *Carver*, in which this court held that the plaintiff, a deputy court clerk and an at-will employee, had not established a protected First Amendment right to run against the defendant—the incumbent clerk and her supervisor—and still retain her job. *Carver v. Dennis*, 104 F.3d 847 (6th Cir. 1997). Nor is this conclusion undermined by the fact that Murphy's termination came only after the election results were known. *See Myers v. Dean*, 216 Fed. App'x 552 (6th Cir. 2007).

Finally, I am not persuaded by Murphy's argument that *Carver* can be distinguished because she was discharged not only for the fact of her candidacy but also for the manner in which she campaigned. As the district court aptly observed, this turns "on the question of whether attacking your opponent's political experience is akin to an expression of political beliefs." As I see it, saying "I am a better or more experienced candidate than my boss" is nothing more than the assertion of a rival candidacy. I believe that the only reasonable conclusion to be drawn in this case is that Murphy was discharged for her rival candidacy and not on account of her political beliefs or affiliations.