RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0332p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID GREENWELL,

>*Plaintiff-Appellant,*

*v.*

No. 07-5694

PAUL PARSLEY,

>*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00768—John G. Heyburn II, Chief District Judge.

Argued: March 21, 2008

Decided and Filed: September 2, 2008

Before: MARTIN and NORRIS, Circuit Judges; STAMP, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Philip C. Kimball, Louisville, Kentucky, for Appellant. David Paul Bowles, LANDRUM & SHOUSE, Louisville, Kentucky, for Appellee. **ON BRIEF:** Philip C. Kimball, Louisville, Kentucky, for Appellant. David Paul Bowles, Robert T. Watson, LANDRUM & SHOUSE, Louisville, Kentucky, for Appellee.

NORRIS, J., delivered the opinion of the court, in which STAMP, D. J., joined. MARTIN, J. (p. 5), delivered a separate concurring opinion.

_____

## OPINION

_____

ALAN E. NORRIS, Circuit Judge. Paul Parsley, the former sheriff of Bullitt County, Kentucky, fired deputy sheriff David Greenwell immediately after he learned through a newspaper article that his deputy intended to run against him in the next election. Greenwell responded by filing suit against Parsley and his chief deputy Mack (Jim) McAuliffe. The only federal cause of action included in the complaint was an allegation that defendants violated Geenwell's First and Fourteenth Amendment right to run for political office. The district court granted summary judgment to defendants on this claim and on various state-law claims that are not at issue on appeal. Plaintiff

_____

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

1

then filed a motion to amend pursuant to Fed. R. Civ. P. 59(e), which the district court denied. The only issue on appeal concerns whether Sheriff Parsley violated Greenwell's First Amendment right to engage in political activity. Like the district court, we hold that *Carver v. Dennis*, 104 F.3d 847 (6th Cir. 1997), a prior published decision of this court, controls the outcome of this case. We therefore affirm the grant of summary judgment.

## I.

Greenwell served as a deputy in Sheriff Parsley's office from 1999 until 2005. On September 7, 2005, an article appeared in the *Louisville Courier-Journal* announcing Greenwell's candidacy for the sheriff's office:

Republican Dave Greenwell, a Bullitt County sheriff's deputy, has filed with the Kentucky Registry for Election Finance to run. . . .

. . . .

Greenwell has been a deputy for six years and spent eight years in the 1990s as a Bullitt County deputy jailer.

He said he'd like to become sheriff and create a public relations position.

A deputy in such a position, he said, would follow up with people who file police reports to make sure the department handled their complaint to their satisfaction. Doing so would hold deputies accountable and improve the department's image . . . .

While reading this announcement, Parsley highlighted the parts of the article that indicated that Greenwell was running, as well as the statements Greenwell made regarding changes he would make to the sheriff's department. Parsley summoned Greenwell to his office, and told him, "See in the paper here where you're trying to take my job." Parsley then asked him to step outside. After consulting with his attorney, Parsley emerged and handed the following termination letter to Greenwell:

Dear Mr. Greenwell:

This will confirm that as of September 7, 2005 you informed the public and me personally that you are running against me for Sheriff in the 2006 election. Therefore, I am terminating your employment with me and my office for obvious reasons.

Greenwell maintains that Parsley fired him not only due to his candidacy, but because Parsley was upset that Greenwell had spoken out on a matter of public concern, namely, the operation of the sheriff's department. For his part, Parsley testified, "He wanted to take my job away from me. . . . He put it in the paper he was running for sheriff – was gonna take my job."

In the end, neither man was elected sheriff. Parsley lost the Democratic primary to Donnie Tinnell, who then defeated Greenwell in the general election.

**II.**

We review the grant of summary judgment *de novo*. *Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008). Further, while the denial of a motion under Federal Rule of Civil Procedure 59(e) is generally reviewed for abuse of discretion, to the extent the motion seeks reconsideration of a grant of summary judgment, the denial of the motion is reviewed *de novo*. *Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). Summary judgment is proper if "there is no genuine issue as to any material fact" such that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

In the *Carver* decision, upon which the district court relied in granting summary judgment to defendants, a county court clerk terminated her deputy clerk the day after the deputy announced her intention to run in the next election. The deputy presented no evidence that she had been dismissed because of her political beliefs. This court characterized the issue before it in these terms:

> Stated narrowly, the issue before us is whether Carver, a deputy county clerk who was an at-will employee in a two-person office – the other person being the county clerk herself – had a First Amendment right to run against the incumbent clerk in the next election and still retain her job.

*Carver*, 104 F.3d at 849. While the First Amendment protects the right of public employees to speak out on matters of public concern, *id.* (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)), it has not been extended to candidacy alone. *Id.* at 850-851. In short, "[t]he First Amendment does not require that an official in [an employer's] situation nourish a viper in the nest." *Id.* at 853.

Since the *Carver* decision, panels of this court have both questioned the wisdom of *Carver* and sought to read it narrowly. *See Murphy v. Cockrell*, 505 F.3d 446, 450 (6th Cir. 2007) ("[W]e limited our holding in *Carver* to the question of whether the First Amendment recognized a government employee's ability to run for office as a fundamental right."); *Myers v. Dean*, 216 Fed. Appx. 552, 554 (6th Cir. 2007) (collecting cases from other circuits in tension with *Carver*, but concluding that it continued to be the law of this circuit). Clearly, cases involving political speech by public employees proceed on a continuum; drawing a clear line between the simple announcement of a candidacy, which does not trigger protected political speech, and an announcement coupled with speech critical of one's opponent (and boss), which does trigger constitutional protection, is not an easy task. In *Murphy*, the dissenting judge expressed the dilemma in these terms:

> I am not persuaded by [plaintiff's] argument that *Carver* can be distinguished because she was discharged not only for the fact of her candidacy but also for the manner in which she campaigned. As the district court aptly observed, this turns "on the question of whether attacking your opponent's political experience is akin to an expression of political beliefs." As I see it, saying "I am a better or more experienced candidate than my boss" is nothing more than the assertion of a rival candidacy. I believe that the only reasonable conclusion to be drawn in this case is that [plaintiff] was discharged for her rival candidacy and not on account of her political beliefs or affiliations.

*Murphy*, 505 F.3d at 456 (dissent). In *Murphy* the plaintiff was only terminated *after* a "spirited" campaign. *Id*. at 448. Furthermore, "it [was] undisputed that [defendant] terminated [plaintiff] due to her political speech *during the course of the campaign*." *Id*. at 449 (emphasis added). In the case before us, by contrast, Parsley terminated Greenwell at the moment that he learned of the candidacy from the newspaper. The fact that he may have highlighted certain implied criticisms of the department in the newspaper account does not transform this case into one of political speech. As

Parsley unequivocally told Greenwell, "you're trying to take my job," and there is nothing in the record to belie the conclusion that the termination was because of the candidacy. The announcement of candidacy "is nothing more than the assertion of a rival candidacy." *Id.* at 456 (dissent). In our view, this case cannot be meaningfully distinguished from *Carver*.

The judgment of the district court is **affirmed.**

---

**CONCURRENCE**

---

BOYCE F. MARTIN, JR., Circuit Judge, concurring.  I concur separately to point out once again the weak precedential support for this Court's decision in *Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997), and express my hope that our Court will revisit this critical First Amendment issue en banc.

I.

As I have noted in previous decisions, *see Murphy v. Cockrell*, 505 F.3d 446, 450 (6th Cir. 2007), the holding in *Carver* was based on two decisions that do not support its final conclusion. *See* 104 F.3d at 850-51 (citing *Bullock v. Carter*, 405 U.S. 134, 143 (1972), and *Clements v. Fashing*, 457 U.S. 957, 963 (1982)).  In *Bullock*, the Supreme Court held simply that states have no obligation to permit a person's name to appear on the ballot. *See* 405 U.S. 134, 143 (1972).  While *Clements v. Fashing* did uphold a law prohibiting certain elected officials from running for the state legislature, that decision expressly distinguished cases where a civil servant is the candidate.  457 U.S. 957, 972 (1982).  Whether out of hostility to the First Amendment or a mere misreading of the precedent, the *Carver* decision expands these cases to find that a public employee may be terminated simply because of the fact of that employee's candidacy.  This decision puts us in opposition with as many as six other circuits, which have held that firings based on one's political candidacy do violate the First Amendment.[1]  In addition, *Carver* continues to be criticized and distinguished in our own circuit, *see Murphy*, 505 F.3d at 450; *Myers v. Dean*, 216 F. App'x 552, 553-54 (6th Cir. Feb. 9, 2007); *Becton v. Thomas*, 48 F. Supp. 2d 747, 756 (W.D. Tenn. 1999) ("[T]he Sixth Circuit clearly had no intention of using the *Carver* case to resolve the broader question of whether the First Amendment ever provides any protection for an individual's right to run for political office.").  Clearly, the time to revisit *Carver* has come.

Still, like a stray cat that hangs around the door and infests the house with fleas, this decision continues to plague this Court's jurisprudence.[2]  As such, we are bound by its conclusion, and I concur in the judgment of the Court.

---

[1] *See Finkelstein v. Bergna*, 924 F.2d 1449, 1453 (9th Cir.) *cert. denied*, 502 U.S. 818 (1991). *See also Stiles v. Blunt*, 912 F.2d 260, 265 (8th Cir. 1990) (recognizing "the right to run for public office"), *cert. denied*, 499 U.S. 919 (1991); *Flinn v. Gordon*, 775 F.2d 1551, 1554 (11th Cir. 1985) ("[H]e certainly had a constitutional right to run for office and to hold office once elected . . . ."), *cert. denied*, 476 U.S. 1116 (1986); *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981) (recognizing "[t]he [F]irst [A]mendment's protection of the freedom of association and of the rights to run for office, have one's name on the ballot, and present one's views to the electorate"), *cert. denied*, 457 U.S. 1120 (1982); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.) (holding that the "plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials . . . lies at the core of the values protected by the First Amendment"), *cert. denied*, 434 U.S. 968 (1977); *Magill v. Lynch*, 560 F.2d 22, 27 (1st Cir. 1977) ("It appears that the government may place limits on campaigning by public employees if the limits substantially serve government interests that are important enough to outweigh the employees' First Amendment rights."), *cert. denied*, 434 U.S. 1063 (1978).

[2] But the cat came back the very next day / The cat came back; we thought he was a goner / But the cat came back — it just wouldn't stay away. *The Cat Came Back*, Harry S. Miller (1893).