NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0550n.06

No. 12-6238

**FILED**
*Jun 04, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CYNTHIA L. RAY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TONYA DAVIS; BEDFORD COUNTY | ) | DISTRICT OF TENNESSEE |
| TENNESSEE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge, SUHRHEINRICH and SUTTON, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Plaintiff-Appellant Cynthia L. Ray ("Ray") challenges the district court's denial of her motion for partial summary judgment, as well as the district court's grant of summary judgment in favor of Defendants-Appellees Tonya Davis and Bedford County, Tennessee (respectively, "Davis" and "the County"), in a § 1983 action alleging that Davis unconstitutionally terminated Ray's employment from the office of Trustee for the County because of her open support for a political rival. Because Ray's claims fail as a matter of law, we AFFIRM.

**I. Background**

1

In 1986, Ray's mother, Peggy Bush ("Bush"), was elected to the office of Trustee for the County.[1] The duties of the County Trustee are set forth in a statute, and require that the County Trustee:

(1) Collect all the state and county taxes on property;

(2) Keep a fair regular account of all the moneys which the county trustee shall receive;

(3) Receive, according to law, all certificates for which the county stands indebted, upon proper warrant;

(4) When a warrant is presented to the trustee for payment, to enter it in a book kept by the trustee for the purpose, ruled in columns, so as successively to show the number, payee or holder, date, day of presentation, and amount of the same;

(5) If there are funds in the treasury, not otherwise appropriated, immediately to pay the demand and take up the warrant; otherwise, deliver it to the owner with the number endorsed, and afterwards to pay it in its numerical order;

(6) Keep fair and regular accounts of such payments;

(7) Pay all just claims against the trustee's county as they are presented, if the trustee has a sufficient sum of money in the trustee's hands not otherwise appropriated;

(8) Upon the trustee's resignation, or going out of office by the appointment of another person, deliver to the trustee's successor all the books and papers of the trustee's office, and especially the book in which the warrants payable are listed and numbered;

(9) On going out of office, make settlement immediately with the county executive, and pay over the balance found in the trustee's hands to the trustee's successor, taking duplicate receipts;

(10) Deliver one (1) of the receipts to the county clerk, to be by the county clerk recorded in the revenue docket; and

---

[1] A county trustee is elected for each county by the qualified voters thereof, and holds office for four years until a successor is qualified. Tenn. Code Ann. § 8-11-101.

2

(11)  Furnish the county executive with such papers and vouchers in the county trustee's possession as the county trustee may think necessary for perfecting any settlement with any person who is accountable for county revenue.

Tenn. Code Ann. § 8-11-104.

All of the employees from the previous Trustee's administration voluntarily quit when Bush was elected into office, and Bush hired her own staff which included daughter, Ray.  Ray was hired as a clerk and was initially assigned bookkeeping and accounting duties within the office.  Ray was promoted several times during her tenure at the Trustee's office and received a pay raise each time that she was promoted.  Ray was ultimately promoted to the position of "business manager," a position that does not appear to exist in any other County office.[2]  According to Bush, Ray was paid more than the other clerks in the office because of "an increase in her duties," which included "mak[ing] the reports, keep[ing] up with all the bank accounts, do[ing] all the accounting, as well as anything else in the office that needed to be done."  Ray's duties included:

(1)  entering checks that were received from other departments;

(2)  balancing accounts;

(3)  preparing monthly financial reports;

(4)  attending County Finance Committee meetings to report on sales tax revenue or inquiring into ongoing issues at the request of the Trustee;

(5)  speaking to the County Commission on behalf of the Trustee's office by preparing written reports and attending Commission meetings by herself to answer any questions that the Commission had about the reports; and

(6)  drawing up paperwork for hiring and firing decisions.

---

[2]When asked in a deposition whether other County offices also had business managers, Ray responded, "No.  Not to my knowledge."

3

Ray was "over everyone" in the office and responsible for doing "whatever was to be done in the office," including "tak[ing] care of the people." Ray was the only person whose name was on the office bank account other than the Trustee herself. However, according to Ray, she "never advised the trustee on how to implement her responsibilities and duties. . . . [or] regarding what information to place in a report to the County Commission."

In 2010, the position of County Trustee opened for election. Davis, who had previously run unsuccessfully against Bush for the position of County Trustee, ran for the position against Jason McGee ("McGee"). While the other employees at the Trustee's office remained neutral about the election, Ray openly and actively supported McGee's campaign. Ray also stated to employees and customers of the Trustee's office, as well as employees of another County office, that she would not work for Davis if she won the election, even though Davis had made a campaign promise that all employees of the Trustee's office would retain their jobs if she took office.

Davis ultimately won the election, entitling her to take the position of County Trustee on September 1, 2010. There is a significant factual dispute over whether Ray subsequently voluntarily resigned from her job or was terminated, but the record does show that following the election Ray began looking for other jobs, cleaned out her office on August 31, 2010, and failed to attend the swearing-in ceremony for Davis, which was attended by all the other employees of the Trustee's office. Despite this, Ray appeared at the Trustee's office on September 1, 2010, at which time Davis told her that her "services were no longer needed."

On December 29, 2010, Ray initiated this action in the United States District Court for the Eastern District of Tennessee (the "district court"). In her complaint, Ray alleged that Davis and the County (the "defendants") were liable under 42 U.S.C. § 1983 and the First and Fourteenth

4

Amendments of the United States Constitution because they terminated her employment based on her political support for McGee. In other words, Ray claimed that she was subjected to a "patronage dismissal."[3] Ray also alleged that the defendants were liable for state law claims of retaliatory discharge and intentional infliction of emotional distress.

Following discovery, the defendants filed a motion for summary judgment. Although the defendants maintained that Ray had not been subjected to a patronage dismissal but had voluntarily resigned, they assumed that she had been subjected to a patronage dismissal for the purposes of summary judgment, and claimed that (1) Ray's position at the Trustee's office fell within at least one of the recognized exceptions to the general prohibition against patronage dismissals; (2) Davis was entitled to qualified immunity; and (3) Ray failed to prove municipal liability against the County. Ray filed a competing motion for partial summary judgment, addressing solely her federal claim, arguing that there was no disputed issue of material fact that Ray had not voluntarily resigned, but had been subjected to a patronage dismissal.[4]

The district court granted the defendants' motion for summary judgment on the grounds that, even assuming that Ray had been subjected to patronage dismissal, her position as business manager of the Trustee's office fell within the *Elrod-Branti* exception. The *Elrod-Branti* exception allows for patronage dismissals for four categories of employees. *See McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996) (interpreting *Elrod v. Burns*, 427 U.S. 347, 372-73 (1976) (plurality) and *Branti*

---

[3]The termination of an employee based on her failure to support a particular political candidate or party is referred to as a "patronage dismissal." *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 264 (6th Cir. 2010).

[4]Along with her motion, Ray filed a "Statement of Undisputed Facts," which the district court disregarded as not complying with the procedural requirements set forth in the Court's Judicial Preferences.

*v. Finkel*, 445 U.S. 507, 517 (1980)). The district court ruled that Ray's position fell within categories two and three of the *Elrod-Branti* exception, because Ray was delegated discretionary authority from the County Trustee, and also acted as a confidential advisor to the County Trustee.[5] The district court granted the defendants' motion for summary judgment, dismissing Ray's § 1983 claim. The district court declined supplementary jurisdiction over the state law claims.

## II. Jurisdiction

This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final order of the district court.

## III. Analysis

Ray alleges that the district court erred in three ways: (1) by allowing the defendants to assume for the purposes of summary judgment that Davis had terminated Ray, even though the defendants simultaneously maintained that Ray had voluntarily resigned from her job; (2) by granting summary judgment in favor of the defendants based on the conclusion that Ray's position fell within the *Elrod-Branti* exception; and (3) by denying Ray's motion for partial summary judgment.[6]

Federal Rule of Civil Procedure 56 instructs the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position by either "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations,

---

[5]The four categories of the *Elrod-Branti* exception are discussed in detail in Part III.B, *infra*.

[6]The district court did not analyze Ray's motion for partial summary judgment independently, but denied it as a corollary to its summary judgment ruling in favor of the defendants.

or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Where parties have filed cross-motions for summary judgment, the court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Gassman*, No. 11-1071, 11-1129, 2012 WL 3932043 (6th Cir. 2012) (quotation marks and citation omitted); *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994). We begin our analysis with the district court's summary judgment ruling in favor of the defendants.

## A.      Assumption of Termination

In their motion for summary judgment, the defendants stated that "even if [Ray] could prove her termination was politically motivated, as [Davis and the County] assume she can *solely for the purpose of summary judgment*, her termination was not a violation of her First Amendment rights" (emphasis added). The defendants also added that they were not waiving their argument that Ray had voluntarily resigned. On appeal, Ray claims that because the defendants had "consistently argued that Ms. Ray quit her job," they should be barred from assuming that Ray had been subjected to patronage dismissal, because it constitutes a "conflicted factual position tactic."

Ray's logic is flawed. The burden of proof for patronage cases is set forth in *Branti*. *See Branti*, 445 U.S. at 518. First, a plaintiff must make out a prima facie case that she was discharged because of political affiliation. *Id.* If the plaintiff succeeds in making that showing, the defendant

7

must then show that the position is of a type that would fall within an exception to the rule against patronage dismissals. *Id.* The assumption that Ray had set out her prima facie case was an assumption made in Ray's favor.[7]

## B. *Elrod-Branti* Exception

Next, Ray argues that the district court erred by granting the defendants' motion for summary judgment by finding that Ray's alleged patronage dismissal fell within the *Elrod-Branti* exception.

In *Elrod v. Burns*, the Supreme Court held that patronage dismissals violate the First Amendment. *Elrod*, 427 U.S. at 359. In *Branti v. Finkel*, the Supreme Court recognized that, although patronage dismissals are generally unconstitutional, "party affiliation may be an acceptable requirement for some types of government employment." *Branti*, 445 U.S. at 517. The government's proffered justifications for patronage dismissals must satisfy strict scrutiny. *Elrod*, 427 U.S. at 363 ("In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights."). Fortunately, "the application of strict scrutiny in patronage cases no longer need concern the courts of appeals and the district courts" because the "Supreme Court has applied strict scrutiny to patronage employment practices on a one-time basis and determined that patronage is constitutionally permissible only

_____

[7]In any event, the district court was required to view all facts in the light most favorable to Ray on the defendants' motion for summary judgment. *Matsushita Elec. Indus.*, 475 U.S. at 587. As noted above, there was a factual dispute as to whether Ray had been fired. Ray contended that she had been terminated and Davis contended that Ray had voluntarily resigned. The district court viewed the evidence in the light most favorable to Ray, and therefore, properly made the assumption that Ray had been terminated.

where political affiliation is an appropriate qualification for the particular employment positions involved (the *Branti* exception)." *McCloud*, 97 F.3d at 1543.

In *McCloud v. Testa*, we outlined four categories of government positions that will always qualify for patronage exceptions. *Id.* at 1557-58. Category one pertains to "positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted," such as a secretary of state. *Id.* at 1557; *Justice v. Pike Cnty. Bd. of Educ.*, 348 F.3d 554, 560 (6th Cir. 2003). Category two pertains to "positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions," such as a deputy secretary of state, to whom the secretary of state has delegated discretionary responsibilities. *McCloud*, 97 F.3d at 1557; *Justice*, 348 F.3d at 561. Category three pertains to "confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors," such as a judge's law clerk or secretary. *McCloud*, 97 F.3d at 1557; *Justice*, 348 F.3d at 562. Category four pertains to "positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies," such as an economics planning committee that requires both a Democrat and Republican representative. *McCloud*, 97 F.3d at 1557-58.

9

In determining whether a public employee's position falls into one of these categories, courts are required to "look beyond the mere job title and examine the actual duties of the specific position." *Murphy v. Cockrell*, 505 F.3d 446, 453 (6th Cir. 2007). "[A] government position need not fall neatly within one of the categories"; a determination that a position fits one of these categories "with reasonable certainty" is sufficient to "remove[ ] its holder from the constitutional protection against political dismissal enjoyed by other employees." *Justice v. Pike Cnty. Bd. of Educ.*, 348 F.3d 554, 560 (6th Cir. 2003). The district court found that Ray's position fell within both category two and category three of the *Elrod-Branti* exception. We agree.

As a preliminary matter, it is clear that a County Trustee is a category one position-holder. In *Summe*, we held that the position of County Clerk was a category one position because it was statutorily-established, term-elected, and imposed duties to enforce the law regarding the issuance of licenses, voter registration, and storage and maintenance of governmental records, so that "County Clerks presumably have discretionary authority regarding how to facilitate these numerous and varied duties." *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 267 (6th Cir. 2010). Similarly, the County Trustee position is a statutorily-created, elected position, vested with discretionary authority to carry out functions of political concern, including the collection, accounting, and distribution of state and county taxes. Because the County Trustee position is a category one position, Ray's position as "business manager" will constitute a category two position if she was delegated discretionary authority vested in the County Trustee, and will constitute a category three position if she functioned as either a confidential advisor to the County Trustee or as a confidential employee who controlled the lines of communication to the County Trustee. *McCloud*, 97 F.3d at 1557.

10

Category two positions are those "positions not explicitly so empowered, but exercising political discretion by a jurisdiction's pattern or practice." *Justice*, 348 F.3d at 559-60. We have noted that category two was "constructed to recognize that it may be necessary to deny First Amendment protection not just to positions at the very top of any state administrative hierarchy, but in some cases to those occupying levels a bit farther down the hierarchy." *McCloud*, 97 F.3d at 1557 n. 31. "[T]he hallmark of a [category] two position is not high rank, but *political* discretion, even if exercised at a fairly low level." *Justice*, 348 F.3d at 561.

Ray claims that her responsibilities were "limited to accounting and bookkeeping" and that she had very little discretion in her duties and did not make policy, but Ray's own deposition, as well as the rest of the record, shows that she was actively involved in the facilitation of collecting, accounting, and distribution of state and county taxes; that she was "over everyone" in the office; that she prepared and presented financial and tax reports to the County Commission; that she was responsible for controlling the Trustee office's bank account; that she handled paperwork for hiring and firing decisions; and that she prepared the personnel policy manual for the office. These are all inherently political duties requiring discretion. *See Blair v. Meade*, 76 F.3d 97, 100 (6th Cir. 1996) ("Money consistently plays a very important role in politics. As a result, budgetary decisions are among the most significant, and the most political, actions which government officials take.") (citation omitted). As the district court recognized, "[t]he exercise of discretion is necessary to fulfill such duties. . . ." Thus, we conclude that it is consistent with our case law to find with "reasonable certainty" that Ray was a category two policy-holder. *Hall v. Tollett*, 128 F.3d 418, 425-26 (6th Cir. 1997) (holding that a chief deputy sheriff was a category two position-holder because he performed the sheriff's duties when the sheriff was unavailable, supervised deputies, and participated in hiring

11

and firing). *Cf. Hager v. Pike Cnty. Bd. of Educ.*, 286 F.3d 366, 377 (6th Cir. 2002) (holding that a school coordinator was not a category two position-holder because she had no budgetary discretion). Next, we turn to whether Ray's position fell within category three of the *Elrod-Branti* exception. Category three positions are those positions of "confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors." *McCloud*, 97 F.3d at 1557.

Although Ray claims that she never advised the County Trustee on how to implement her responsibilities and duties, she testified in her deposition that she made reports to the County Commission on behalf of the Trustee's office, and that she was the only person who prepared these reports. Bush testified in her deposition that although she reviewed Ray's reports as County Trustee, she did not actually know what the County Commission required or desired in the reports, and also that she never made a presentation of the reports to the County Commission. Ray also assisted the County Trustee in determining personnel decisions and policy for the office. Therefore, it appears with reasonable certainty that Ray did occupy a "confidential advisor" role to the County Trustee. *See Latham v. Office of Atty. Gen. of Ohio*, 395 F.3d 261, 268-69 (6th Cir. 2005) (holding that an assistant state attorney general was a category three position-holder because even though she was under close supervision, she was responsible for making policy recommendations to the state attorney general). *Cf. Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 437 (6th Cir. 2000) (holding that a chief jailer was not a category three position-holder because she did not have access to any confidential or political information).

Lastly, two more factors suggest that Ray's position fits into category three. First, as Ray admitted, it was a position created exclusively for her. *See Summe*, 604 F.3d at 268 (noting that a chief deputy county clerk position was "ad hoc", existing "entirely at the whim" of a category one position-holder, in concluding that the position fit into category three). Second, Ray was hired by her mother. *See Hoard v. Sizemore*, 198 F.3d 205, 213 (6th Cir. 1999) ("In addition, plaintiff Vernon Muncy is Judge Muncy's brother, a fact which only makes it more likely that the position is inherently political. . . ."). These two factors are not dispositive, but taken with the rest of the record, it is apparent that Ray's alleged patronage dismissal falls within the *Elrod-Branti* exception. Therefore, the district court properly ruled in favor of the defendants on summary judgment.[8]

## C. Patronage Dismissal

Ray also argues that the district court erred in denying her motion for partial summary judgment because there was no genuine issue of disputed fact that she had been subjected to a patronage dismissal.[9] However, as discussed above, even assuming that Ray had been subjected to

---

[8]The district court did not explicitly address the qualified immunity or municipal liability defenses raised by the defendants, but they are implicitly addressed by the *Elrod-Branti* analysis. Determining whether qualified immunity exists generally involves first determining whether a constitutional violation occurred and, if so, a subsequent determination of whether the right infringed was clearly established. *McKinley v. City of Mansfield*, 404 F.3d 418, 429-30 (6th Cir. 2005). Therefore, in order to overcome qualified immunity, Ray would have to establish that a "clearly established" constitutional right was violated. Because Ray's dismissal falls into the *Elrod-Branti* exception, no constitutional violation occurred. Furthermore, in order to show municipal liaiblity, Ray would have to prove that an injury occurred pursuant to an officially executed policy, or toleration of custom that led to, caused, or resulted in the deprivation of a constitutionally protected right. *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993). Ray has set forth no facts demonstrating proof of a policy or custom.

[9]Paradoxically, while Ray argues that there is no genuine issue of material fact that she was subjected to a patronage dismissal, she also asks this court to prohibit the defendants from making the assumption that she was subjected to a patronage dismissal in their summary judgment motion, as noted in Part A.

13

a patronage dismissal, her dismissal was nonetheless constitutional under the *Elrod-Branti* exception.[10]

## IV. Conclusion

For the reasons set forth above, we AFFIRM the order of the district court.

---

[10]Ray also argues, confusingly, that the district court "applied only the political patronage dismissal standards . . . the District Court should have applied both the public speech retaliation standards and the patronage dismissal standards since Plaintiff alleged and showed that she gave public speeches and statements for years and her dismissal results directly from those protected statements." Ray states that she has properly alleged the elements for a public speech retaliation claim, that "(1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [her] protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). However, the district court did not need to engage in the *Scarbrough* test because it already assumed, in Ray's favor, that the *Scarbrough* test had been met—that Ray had engaged in protected speech and that she had been terminated as a result of it.