**Judge Paul E. GILDAY et al.,**
**Plaintiffs-Appellants,**

**v.**

The **BOARD OF ELECTIONS OF HAM-**
**ILTON COUNTY, OHIO, et al.,**
**Defendants-Appellees.**

No. 72–1234.

United States Court of Appeals,
Sixth Circuit.

Dec. 19, 1972.

Arnold Morelli, Cincinnati, Ohio, for plaintiffs-appellants; Bauer, Morelli & Heyd, Cincinnati, Ohio, on briefs.

Arthur M. Ney, Asst. Pros. Atty., for defendants-appellees; Simon L. Leis, Jr., Prosecutor, Cincinnati, Ohio, William J. Brown, Atty. Gen. of Ohio, Thomas V. Martin, Executive Asst. to Atty. Gen., Michael R. Grove, Asst. Atty. Gen., Columbus, Ohio, on briefs.

Before PECK, MILLER and KENT, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The legislature of Ohio by a number of statutes has created approximately 108 municipal courts and has provided that the number of judges shall be determined from time to time on the basis of the population of the territorial jurisdiction of each court. Ohio Rev.Code Ann. § 1901.05. (Baldwin 1971). For the first one hundred thousand inhabitants it is provided that there shall be one judge and one additional judge for each increase of seventy thousand inhabitants or part thereof. However, as the result of a legislative amendment, effective January 1, 1968, the Cincinnati Municipal Court's territorial jurisdiction was expanded to make it coterminous with the boundaries of Hamilton County and its name was changed to the Hamilton County Municipal Court. The amendment provided in pertinent part:

> In the Hamilton County Municipal Court five judges shall be elected in 1967 and four judges shall be elected in 1971 . . . .

This meant that as of 1968 Hamilton County had nine municipal court judges even though its 1960 population of 864,-121 would have entitled it to twelve judges under the population provisions of § 1901.05.

According to the 1970 census, Hamilton County had a population of 924,018 residents and under § 1901.05 would have been entitled to thirteen judges on its municipal court.

There was thus an apparent conflict between the two statutes with respect to the Hamilton County Municipal Court. This problem was considered by the Supreme Court of Ohio in State ex rel. Leis v. Board of Elections, 28 Ohio St.2d 7, 274 N.E.2d 560 (1971). In that case the court ruled that with respect to the first 864,121 people (the population of Hamilton County as shown by the 1960 census figure) § 1901.05 did not apply. The Hamilton County Municipal Court in accordance with this ruling would be entitled to only nine judges instead of the twelve judges which would have been allocated if the provisions of § 1901.05 should apply. Nevertheless, the Ohio Supreme Court held with respect to the increase in population of approximately sixty thousand people, as shown by the 1970 census, that § 1901.05 did apply to the extent of the increase and enlarged the number of municipal court judges by one. Under this ruling the court was allowed ten judges instead of thirteen.

The action below was instituted by a number of judges who were members of the Hamilton County Municipal Court and by certain candidates for election to the court and certain lawyers who practiced before the court. Named as defendants were the Governor of the State, the Secretary of State, and the Hamilton County Board of Elections.

The principal basis for the plaintiffs' claim is that the Ohio statutes, as interpreted by the highest court of the state, have the effect of denying the plaintiffs and other residents and citizens of Hamilton County, Ohio, the equal protection of the law guaranteed by the Fourteenth Amendment, in that the number of judges assigned to the Municipal Court of Hamilton County on the basis of population is substantially less than the num-

ber accorded to the 87 other counties of the state on the basis of population.

The amended complaint requested the court below to declare invalid the allocation of judges to the Municipal Court of Hamilton County, Ohio, as determined by the legislature and Supreme Court of that state, and to require the defendants to prepare ballots for the upcoming election to the end that the Hamilton County Municipal Court would have thirteen judges in all. The district court, after a full hearing, entered its findings and conclusions in which it held that the plaintiffs were not entitled to the relief sought. Accordingly, a judgment of dismissal of the action was entered after which a timely appeal to this court was perfected.

■ According to Ohio's allocation of judgeships on a population basis to the municipal courts of that state, it has been amply demonstrated, as the district court found, that the Hamilton County Municipal Court is provided with a smaller number of judges on the basis of population than the number assigned on the same basis to other municipal courts of the state. If the statutory population formula should be applied to Hamilton County, its Municipal Court would be entitled to four more judges, thus making a total of thirteen instead of nine. Amply demonstrated also is the fact that the caseload of the Hamilton County Municipal Court has significantly increased from 12,439 in 1967 to 13,157 in 1969. A comparison of Hamilton County with Franklin County and with the City of Cleveland illustrates the mathematical discrepancy. In the year 1970, the Hamilton County Court had 13,742 cases with nine judges, while Franklin County in that year had only nine judges and a caseload of 10,733. On the other hand, the City of Cleveland in the year 1969 with as many as thirteen judges had a caseload of only 9,244 cases. The record convinces us that there has been a definite disparity of treatment so far as the Municipal Court of Hamilton County is concerned, and we have no doubt that the caseload problem

of that court is more aggravated than that prevailing in other municipal courts of the state. It may be conceded that a strong practical argument may be made for the assignment of additional judgeships to this particular court. Nevertheless, assuming without deciding that plaintiffs have standing to raise the issues they present, we agree with the district court that the record fails to establish a violation of the Federal Constitution because of the manner in which Ohio has seen fit to allocate judgeships to the various counties and cities of the state. Although the plaintiffs in the complaint plead a violation of the due process clause of the Fourteenth Amendment, their reply brief concedes:

> We are not arguing that there has been a denial of due process of law. We are arguing that the impairment or dilution of the due process right to a meaningful hearing, as compared to the treatment accorded all of the other municipal courts in the state, is a denial of equal protection. (Plaintiffs' reply brief, p. 6).

As we understand the plaintiffs' theory, they do not argue that the hearings afforded by the Hamilton County Municipal Court fail to comply with the requirement of the due process clause that litigants be accorded a meaningful hearing. What they do contend is that because the Hamilton County Municipal Court does not have the same number of judges on the basis of population as other municipal courts, it necessarily follows that the hearings which that court is able to accord to litigants are less meaningful than litigants receive in other municipal courts. Consequently, while there is no evidence of a denial of due process of law, a "less meaningful" hearing in Hamilton County, as compared with other counties, constitutes an equal protection violation.

■ We are of the opinion that this theory is without merit. It is conceded that a meaningful hearing for litigants is a basic and essential part of our constitutional system. Yet it does not follow from this premise that the

state is required by the equal protection clause to extend to each of its subordinate units of government, whether it be a county, a city, or otherwise, precisely the same kind or quality of judicial hearing so long as the hearing afforded meets due process standards. The states may make reasonable classifications in the assignment of judgeships, as it may do for other purposes, provided the classification is not unreasonable, arbitrary or capricious. The courts have no right to intervene to impose their own notions of policy. The "strict scrutiny" approach to equal protection is inapplicable here for the reason that the classification made by the state cannot be said to involve "suspect criteria" or adversely to affect a "fundamental interest" since there is no showing that hearings in the Hamilton County Municipal Court are not in compliance with due process. Some examples of classifications falling within categories of suspect criteria or fundamental interests are those based on race, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); possibly on wealth, Rodriguez v. San Antonio Independent School District, 337 F.Supp. 280 (W.D.Tex.1971); probable jurisdiction noted, 406 U.S. 966, 92 S.Ct. 2413, 32 L.Ed.2d 665 (1972); on the right to travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); on the right to procreate, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); on various aspects of the criminal process, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); and on the right to vote, Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

In its findings of fact and conclusions of law the district court has demonstrated that the trial courts of Ohio assume different forms in different parts of the state, resulting in multiple classifications. Its trial courts are divided into common pleas courts, municipal courts, county courts and in some places mayors' courts. In most instances Ohio's eighty-eight counties have a common pleas court and at least one common pleas judge, with trial jurisdiction in felony cases and a wide civil jurisdiction. There are more than one hundred municipal courts with varying territorial jurisdiction. In twenty-five of Ohio's counties there are no municipal courts at all and in some there are more than one. These courts also have varying amount limitations in civil cases. The county courts have approximately one judge for each thirty thousand inhabitants and jurisdiction corresponding to that of the municipal courts with a five hundred dollar limit or ceiling in civil matters. The state, according to the findings of the district judge, does not pay the county or municipal judges. Their compensation is provided by the county, the city, or the township. From this it will be seen that the judicial structure in Ohio is complex and that population is only one significant factor in the total scheme. The system is not a unitary one, even with respect to the municipal courts.

We agree with the district court that "just as it [the legislature] adjusts territory and jurisdiction, etc., it may without patently evidencing the reason and without being compelled to explain, adjust the factor of number of judges without running afoul of the 'equal protection' clause in either instance."

▮ We need not consider in detail the further argument of appellants based upon the "one man, one vote" principle which basically stems from a dilution or impairment of voting rights. A number of district courts have held that equal protection does not require the allocation of state judges on this basis. See Buchanan v. Gilligan, 349 F.Supp. 569 (N.D.Ohio, 1972); DeKosenko v. New York, 311 F.Supp. 126 (S.D.N.Y., 1969); Kail v. Rockefeller, 275 F.Supp. 937 (E.D.N.Y., 1967); New York State Ass'n of Trial Lawyers v. Rockefeller, 267 F.Supp. 148 (S.D.N.Y., 1956); Stokes v. Fortson, 234 F.Supp. 575 (N.D.Ga., 1964). The reasoning in the Fortson case is particularly applicable here.

Moreover, there is no way to harmonize selection of these officials on a pure population standard with the diversity in type and number of cases which will arise in various localities, or with the varying abilities of judges and prosecutors to dispatch the business of the courts. An effort to apply a population standard to the judiciary would, in the end, fall of its own weight.

Other arguments advanced by plaintiffs with their nuances have been considered by the court and are deemed to be without merit.

The remedy sought by the plaintiffs lies with the Ohio legislature and not with the federal courts.

The judgment of the district court is affirmed.