RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0419p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JUAN MOLINA-CRESPO,

       *Plaintiff-Appellant,*

    *v.*

UNITED STATES MERIT SYSTEMS PROTECTION
BOARD,

       *Defendant-Appellee.*

No. 07-3745

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-02796—Dan A. Polster, District Judge.

Argued: July 22, 2008

Decided and Filed: November 24, 2008

Before: BOGGS, Chief Judge; MOORE and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, for Appellant. Sara B. Rearden, United States MERIT SYSTEMS PROTECTION BOARD, Washington, D.C., for Appellee. **ON BRIEF:** Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, for Appellant. Sara B. Rearden, United States MERIT SYSTEMS PROTECTION BOARD, Washington, D.C., for Appellee.

      CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. BOGGS, C. J. (pp. 11-13), delivered a separate concurring opinion.

---

## OPINION

---

      CLAY, Circuit Judge. Juan Molina-Crespo ("Molina") appeals the district court's grant of summary judgment to the United States Merit Systems Protection Board ("MSPB" or "Board"). Molina challenges the district court's conclusion that the Board did not abuse its discretion in determining that Molina's violation of 5 U.S.C. § 1502(a)(3), the provision of the Hatch Act that regulates the political activity of state employees who administer federal funds, warranted his removal. Molina also appeals the district court's rejection of his challenges to the constitutionality of the Act, including attacks based on equal protection, due process, and the First Amendment. For the following reasons, we affirm the decision of the district court.

1

## BACKGROUND

In 1999, Molina was appointed as the Executive Director of the Lorain County Children and Families First Council ("LCCFFC"), an Ohio government agency that is financed in part by the federal government. The federal government provides funds to Ohio agencies, which are then passed through to the LCCFFC. It is undisputed that, as Director, Molina was subject to the Hatch Act because he was "an individual employed by a State . . . agency whose principal employment is in connection with an activity which is financed in whole or in part" by the federal government. 5 U.S.C. § 1501(4).

In December 2003, while serving as Director, Molina officially declared his candidacy in the Democratic primary election for the office of Lorain County Commissioner. On January 13, 2004, Molina received a phone call from the United States Office for Special Counsel ("OSC"), the federal agency charged with administering the Hatch Act. The OSC advised Molina that his candidacy violated § 1502(a)(3) of the Act, which prohibits a "State or local officer or employee" from "be[ing] a candidate for elective office," as well as the Act's implementing regulations embodied in 5 C.F.R. § 151.121(c). During the phone call, the OSC informed Molina that he would either have to resign his position at the LCCFFC or withdraw his candidacy in order to comply with the Act's requirements. Molina, however, told the OSC that he did not consider himself a "covered employee" subject to the Act because the federal funding the LCCFFC received first passed through various state agencies.

On February 3, 2004, the OSC sent a letter to Molina in which it informed Molina that his candidacy violated the Hatch Act, and explained the OSC's basis for its conclusion. It also responded to Molina's earlier statement that he "did not feel he was covered by the Hatch Act" by informing Molina that "an employee is covered by the Hatch Act even if the agency receives the federal funds indirectly through a state agency." (J.A. 293.) The letter also cited the previous phone call and explained that the OSC would provide Molina "an opportunity to come into compliance with the law" by withdrawing his candidacy or resigning his position with the LCCFFC by February 13, 2004. (*Id.*) Rather than providing evidence of his resignation or withdrawing his candidacy, however, on February 13, 2004, Molina sent a letter to the OSC requesting a full hearing before the MSPB, the federal agency charged with adjudicating cases arising under the Hatch Act. *See* 5 U.S.C. § 1505.

Molina's candidacy for Lorain County Commissioner ended when he failed to win the primary held on March 2, 2004. On October 7, 2004, the OSC filed a formal complaint with the MSPB alleging that Molina violated the Act by being a candidate for elective office. The MSPB assigned the case to an administrative law judge ("ALJ"), and the parties agreed no material facts were in dispute and filed motions for summary judgment. On March 25, 2005, the ALJ issued his decision. The ALJ concluded that Molina had violated the Act when he became a candidate for elected office while serving as Director of the LCCFFC. Further, the ALJ found that Molina's violation warranted removal from his position. With respect to Molina's challenges to the constitutionality of the Act, which he raised in his motion for summary judgment, the ALJ concluded that, under *Special Counsel v. Alexander*, 71 M.S.P.R. 636, 645 n.2 (M.S.P.B. 1996), the administrative agency could not adjudicate the constitutionality of statutes. As a result, the ALJ did not consider the merits of Molina's arguments regarding the constitutionality of the Act.

On April 29, 2005, Molina petitioned the full MSPB to review the ALJ's determination. The MSPB denied Molina's petition, making the ALJ's decision the final decision of the agency. In addition, the Board ordered the LCCFFC to remove Molina from his position as Director within thirty days and warned that, if the LCCFFC failed to dismiss Molina, it would lose federal funds equal to two years of Molina's pay. On December 2, 2005, Molina resigned.

Molina then sought review of the Board's decision in the United States District Court for the Northern District of Ohio pursuant to 5 U.S.C. § 1508. The parties filed for summary judgment, and the district court ruled in favor of the MSPB. In its decision, the district court upheld the Board's conclusion that Molina violated the Hatch Act, and also found that the Board did not abuse its discretion in concluding that his violation warranted removal. The district court also rejected Molina's claims that the Act violated his First Amendment rights and constitutional guarantees of due process and equal protection. Molina appealed, asserting that the district court erred in rejecting his various challenges to the constitutionality of the Act, and also argued that § 1502(a)(3) violated principles of federalism. With respect to the Board's conclusions, although Molina does not challenge the finding that his actions constituted a violation of the Act, he argues that the district court erred in upholding the Board's conclusion that his violation warranted his removal.

## DISCUSSION

### I.       Constitutional Challenges to the Hatch Act

This Court reviews *de novo* a district court's grant of summary judgment based on the constitutionality of a statute. *See J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 382 (6th Cir. 2008); *see also Flamingo Exp., Inc. v. FAA*, 536 F.3d 561, 567 (6th Cir. 2008) (noting that questions of law are reviewed *de novo*).[1]

On appeal, Molina asserts six challenges to the constitutionality of the Hatch Act. Molina first argues that the Act impermissibly infringes his First Amendment rights to free speech and association. Second, Molina argues that the Act violates the Equal Protection Clause because it discriminates on the basis of wealth, and also because it creates an "irrational classification" that distinguishes between those already holding elective office and those seeking elective office for the first time. In his fourth and fifth challenges, Molina asserts that the Act violates his rights to procedural due process and substantive due process. Finally, Molina argues that the Act intrudes on established principles of federalism.[2]

### A.       First Amendment Claims

Molina argues that the Hatch Act impermissibly infringes on his fundamental First Amendment rights to free speech and association, and that this Court should subject the Hatch Act to strict scrutiny. In particular, he contends that strict scrutiny is appropriate because the Hatch Act infringed on his fundamental right to affiliate with a political party. The district court rejected Molina's claims, finding that the Act would survive either rational basis or strict scrutiny review.

The Supreme Court has addressed the constitutionality of the Hatch Act's restrictions on federal employees' political activities, and has concluded that the Act's prohibitions are constitutional. *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 103-04 (1947); *Oklahoma v.*

---

[1] Because Molina seeks reinstatement with the LCCFFC and back pay, Molina's appeal is not moot. *Kraham v. Lippman*, 478 F.3d 502, 506 n.3 (2d Cir. 2007). Further, Molina challenges an electoral practice that fits into the mootness doctrine's "capable of repetition, yet evading review" exception. *Merle v. United States*, 351 F.3d 92, 95 (3d Cir. 2003) (holding that the passing of the election at issue did not moot appellant's attack on the constitutionality of the Hatch Act as applied to federal employees).

[2] While Molina raises six arguments regarding the constitutionality of the Act, we reach the merits with respect to only four of Molina's claims. Molina has failed to develop his substantive due process and federalism challenges and, as a result, he has waived these arguments on appeal. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (noting that issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

*United States Civil Serv. Comm'n*, 330 U.S. 127, 143-44 (1947); *United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 567 (1973). The Court has also upheld challenges to state statutes that impose similar restrictions on state employees. *Broadrick v. Oklahoma*, 413 U.S. 601, 617-18 (1973). Molina attempts to argue that these decisions are inapplicable since they did not address whether application of the federal Hatch Act to a state employee violates the state employee's constitutional rights. *But cf. Oklahoma*, 330 U.S. at 143-44 (upholding a decision that a state employee's participation in political activities violated the Hatch Act and warranted his removal from his state position and concluding that, because the government has "power to fix the terms upon which its money allotments to states shall be disbursed," the Hatch Act did not unconstitutionally invade the sovereignty of Oklahoma).

Although neither the Sixth Circuit nor the Supreme Court has addressed the narrow question Molina presents, both this Court and the Supreme Court have held that "there is no protected right to candidacy under the First Amendment, and a public employee may be terminated because of the fact of that employee's candidacy." *Murphy v. Cockrell*, 505 F.3d 446, 450 (6th Cir. 2007); *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972). Accordingly, the application of § 1502(a)(3) to Molina, in restricting his ability to maintain his position with the county agency while running for political office, does not implicate a fundamental right, and strict scrutiny is inapplicable. It is well-established that a law that results in the termination of a public employee who runs for elective office does not need to survive heightened scrutiny to be constitutional. *See Murphy*, 505 F.3d at 450.

Although the district court concluded that a rational-basis standard was appropriate, and that § 1502(a)(3) "passes Constitutional muster under the rational basis test," it also conducted an alternative analysis applying strict-scrutiny review. *Crespo v. U.S. Merit Sys. Protection Bd.*, 486 F. Supp. 2d 680, 691 (N.D. Ohio 2007). The district court concluded that Molina's "First Amendment rights of free speech, free association, and political participation are implicated," and that strict scrutiny might be appropriate because "the normal 'employer-employee' relationship generally analyzed in Hatch Act cases does not apply, and, therefore, neither would the lowered level of constitutional protections." *Id.* at 691-92. On appeal, Molina argues that this Court should apply strict scrutiny to find the Act unconstitutional. This Court's decision in *Murphy*, however, establishes that § 1502(a)(3) does not intrude on Molina's First Amendment rights and, as a result, is not subject to strict scrutiny.

In *Murphy*, this Court considered whether the termination of a public employee who ran against her supervisor in an election, and who publicly criticized that supervisor as part of her campaign, violated the public employee's First Amendment rights. 505 F.3d at 452. The employee's supervisor stated that, if Murphy had "simply remained a candidate" and had not "actively campaigned," the supervisor would not have terminated Murphy. *Id.* at 450. Because Murphy was terminated based on the statements she made during her campaign rather than solely because of the fact of her candidacy, this Court concluded that *Carver*[3] was not dispositive, and that the employee's termination violated her First Amendment rights. *Id.* at 452. In reaching its holding, this Court emphasized that it was Murphy's political expressions and political speech during the campaign, not her candidacy itself, that "trigger[ed] protection under the First Amendment." *Id.* at 451.

---

[3]In *Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997), this Court concluded that there is no fundamental right to be a candidate for political office, and that a public employee may be terminated because of the fact of that employee's candidacy.

Based on this Court's reasoning in *Murphy*, the order to remove Molina as Director based on Molina's violation of the Hatch Act did not implicate his First Amendment rights. Molina concedes in his brief that he was found in violation of the Hatch Act "***solely*** because he ran for county commissioner." Appellant Br. 9. He does not allege that the Board found him in violation of the Hatch Act because of statements he made during the course of his campaign. In addition, Molina does not claim employment discrimination based on his party affiliation, the federal government's disapproval of his campaign slogan, or any other political activities. Thus, it was the fact of his candidacy alone that ultimately led the Board to conclude that Molina violated the Hatch Act, and that his violation warranted removal. As a result, the Board could constitutionally order the LCCFFC to remove Molina, and the district court was incorrect to suggest that the application of the Hatch Act to Molina implicated his First Amendment rights. *See Murphy*, 505 F.3d at 450.

Because the Act does not impact a fundamental right, strict scrutiny does not apply. The concurrence, however, suggests that "judicial restraint" requires this Court to avoid the issue of the applicable level of scrutiny. Instead, the concurrence would conclude that § 1502(a)(3) is constitutional even if strict scrutiny applied. The Supreme Court has held that "it is the rare case" where a law would survive strict scrutiny. *Burson v. Freeman*, 504 U.S. 191, 211 (1992). Thus, it is unclear why the concurrence finds that judicial restraint requires this Court to uphold a law under the highest level of constitutional scrutiny, rather than to apply *Murphy*'s well-established holding that statutes such as § 1502(a)(3) are not subject to heightened scrutiny. Contrary to the concurrence's claim, following the well-established rule in *Murphy* demonstrates more restraint than would concluding that a law survives strict scrutiny, an action the Supreme Court has advised is appropriate only in rare instances. The concurrence further suggests that its approach avoids reaching the issue as to what level of scrutiny is appropriate, satisfying the rule that "courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetary Protective Ass'n*, 495 U.S. 439, 445 (1988). Despite this suggestion, the concurrence does not explain why a holding that § 1502(a)(3) survives strict scrutiny—the highest level of *constitutional* scrutiny—is any less of a constitutional holding than one finding that § 1502(a)(3) is subject to rational basis review.

Thus, because *Murphy* establishes that the order to remove Molina did not, as the district court and concurrence state, implicate Molina's First Amendment rights, strict scrutiny is inappropriate. *See Murphy*, 505 F.3d at 450. Accordingly, whether § 1502(a)(3) is constitutional depends on whether there is a rational basis for the restriction on running for elective office. *See Kraham v. Lippman*, 478 F.3d 502, 506 (2d Cir. 2007) (citing *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)) (noting that, in First Amendment cases, courts apply either strict scrutiny or rational basis review, and that laws aimed at ensuring "fairness in government" that "affect[] political party participation only in a limited and incidental fashion . . . should be reviewed only for a rational basis").

As the district court correctly concluded, the Hatch Act survives rational basis review and is constitutional. The Act bars the candidacy of an official "whose principal employment is in connection with an activity which is financed in whole or in part" by the federal government. 5 U.S.C. § 1501(4). We agree with the district court that the federal government has a "legitimate interest in making sure that state programs funded in whole or in part with federal dollars be administered in a non-partisan manner," and in "ensuring that the public not perceive that those employees involved in administering the programs are partisan politicians exerting inappropriate partisan influence." *Crespo*, 486 F. Supp. 2d at 691. The Act's prohibition on candidacy for elective office is rationally related to the government's interest because it allows the government to remove actual or apparent partisan influence from the administration of federal funds. Accordingly, § 1502(a)(3) does not violate the First Amendment as applied to Molina.

**B.      Equal Protection Claims**

Molina argues that the Hatch Act violates the Equal Protection Clause in two ways.  First, Molina contends that the Hatch Act creates an "irrational classification" that distinguishes between individuals already holding elective office and those in appointed positions seeking elective office for the first time.  In addition, Molina argues that the Act impermissibly discriminates on the basis of wealth.

1.          Irrational Classification

Molina argues that § 1502(c), which exempts certain state and local employees from the prohibitions of § 1502(a)(3), creates an unconstitutional classification between first-time elective-office seekers and those who already hold elective office.  Exempted employees under § 1502(c) include the Governor or Lieutenant Governor of a state, the mayor of a city, "a duly elected head of an executive department of a State or municipality who is not classified under a State or municipal merit or civil-service system," and "an individual holding elective office."  Thus, exempt employees are elected officials holding a partisan office, while non-exempt employees are those holding appointed positions.

If a statutory classification "neither proceeds along suspect lines nor infringes fundamental constitutional rights," the classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993); *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 790 (6th Cir. 2005).  Further, the government "may make reasonable classifications . . . provided the classification is not unreasonable, arbitrary or capricious." *Gilday v. Bd. of Elections of Hamilton County, Ohio*, 472 F.2d 214, 217 (6th Cir. 1972).  As previously discussed, because the right of candidacy is not a fundamental right, the Act does not impinge on Molina's First Amendment rights.  Further, the Hatch Act does not create a suspect classification, such as a classification based on race, gender, or national origin. *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 503 (6th Cir. 2007).  Accordingly, rational-basis review is appropriate, and Molina must show that no conceivable basis could support the Act's classification.

We agree with the district court that "Congress could have reasonably believed that exempting . . . elected officials from the reach of § 1502(a)(3) was rational, even though the official duties of these types of elected positions involve, in part, the administration of federal funds." *Crespo*, 486 F. Supp. 2d at 694.  Through § 1503(a)(3), the federal government seeks to eliminate the appearance of partisan influence in the administration of federal funds by politically neutral appointed officials by banning such officials from becoming candidates while serving in their appointed positions.  With respect to officials holding elective office, however, restricting candidacy does not eliminate the suggestion of partisan influence because the official is already serving in a partisan office.  Thus, although the positions exempted from § 1502(a)(3) might involve the administration of federal funds, prohibiting the officials in those positions from declaring candidacy would not remove the appearance of partisan influence because the elected officials would continue to be partisan officials administering federal funds.  The legitimate interest in preventing partisan influence in administering federal funds provides a rational basis for the Act's classification distinguishing between appointed and elected officials and, accordingly, the Act does not violate the Equal Protection Clause. *See Beach Commc'ns*, 508 U.S. at 313.

2.          Wealth-Based Classification

In his second equal protection based challenge to the Act, Molina argues that the Act impermissibly discriminates on the basis of wealth, and that strict scrutiny should apply to his claim.

The Supreme Court has recognized that wealth discrimination alone does not provide an adequate basis for invoking strict scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973). Further, a class of less wealthy individuals is not a suspect class warranting strict scrutiny review. *Id.* at 28. Thus, § 1502(a)(3) does not trigger heightened scrutiny on the grounds that it creates a wealth-based classification.

Acknowledging that wealth is not a suspect classification, Molina instead argues that this Court should apply strict scrutiny review because the "choice between running for elective office and keeping one's job is, as a practical matter, essentially a wealth-based restraint on the exercise of fundamental constitutionally-protected [sic] rights." Appellant Br. 30. Molina compares the Act's restriction to property ownership and filing fee requirements that the Supreme Court has found violate the Equal Protection Clause because they impact fundamental constitutional rights, or because the requirements are unsupported by "any rational state interest."

The cases on which Molina relies, however, are distinguishable. Molina argues that *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966), supports his argument that § 1502(a)(3)'s prohibition creates an unconstitutional wealth-based classification. *Harper* held unconstitutional a state poll tax. The Court concluded that "a State violates the Equal Protection Clause . . . whenever it makes the affluence of the voter or payment of any fee an electoral standard." *Id.* at 666. Thus, *Harper* addressed a state law provision that impacted voting rights, not the constitutional rights of a candidate. The Court's decision in *Harper*, therefore, does not support Molina's argument that strict scrutiny should be applied in this case.

Molina also relies on *Bullock v. Carter* to argue that strict-scrutiny review is appropriate. In *Bullock*, the Court held unconstitutional a Texas law that required candidates in a primary election to pay a filing fee. 405 U.S. at 144. The law required the candidates to raise money, sometimes as much as $8900, from constituents. *Id.* at 145. The Court found that the law's "patently exclusionary character" had a "real and appreciable impact on the exercise of the franchise," and that its impact was "related to the resources of the voters supporting a particular candidate." *Id.* at 143-44. Thus, because the law impacted voters' choice based on the *voters'* wealth, the Court required the state to show that the requirement was necessary to serve a legitimate state interest. *Id.* at 144. The Court found that, because "other means . . . [we]re available" to protect the state's "valid interests" in controlling the number of candidates on the primary ballot, the law violated the Equal Protection Clause. *Id.* at 146.

While *Bullock* establishes that laws creating a classification based on a candidate's wealth will sometimes impact a fundamental constitutional right making strict scrutiny review appropriate, Molina has failed to demonstrate that the Hatch Act implicates such a fundamental right. As noted above, an individual does not have a fundamental right to run for elected office. Further, Molina cannot show that, by prohibiting him from seeking elective office while serving as an appointed official, the Hatch Act infringes *voters'* constitutional rights as in *Bullock*. Thus, heightened scrutiny is inapplicable. Accordingly, the Hatch Act will "be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *Beach Commc'ns*, 508 U.S. at 313, and the "classification is not unreasonable, arbitrary or capricious." *Gilday*, 472 F.2d at 217.

In *Quinn v. Milsap*, 491 U.S. 95 (1989), and *Turner v. Fouche*, 396 U.S. 346 (1970), the Court held unconstitutional laws requiring property ownership in order to seek certain government positions because no rational basis supported the restrictions. The Court in *Quinn* held that a city could not make real-property ownership a requirement for serving on a government board with the mandate "to reorganize the entire governmental structure of St. Louis city and county." *Quinn*, 491 U.S. at 109. Similarly, in *Turner*, the Court considered a state requirement that candidates for the

county board of education be property owners. *Turner*, 396 U.S. at 363. The Court concluded that it was "impossible to discern any interest the qualification can serve" and, accordingly, held that the law was unconstitutional under the Equal Protection Clause. *Id.* at 362, 363.

While § 1502(a)(3) also imposes a financial burden on candidates, unlike the laws in *Turner* and *Quinn*, § 1502(a)(3) is rationally related to legitimate government interests, and therefore survives rational-basis review. As discussed above, the federal government has a legitimate interest in preventing the appearance of partisan influence in the administration of federal funds, and could have rationally concluded that prohibiting certain employees from being candidates for elective office would achieve that goal. *See Broadrick*, 413 U.S. at 607 n.5 (noting that a state must have "some leeway in determining which of its positions require restrictions on partisan political activities and which may be left unregulated"). Thus, the Hatch Act's prohibition on candidacy while serving in an appointed office is rationally related to a legitimate government interest, and is not arbitrary or capricious. We therefore conclude that Molina has failed to show that the Hatch Act violates the Equal Protection Clause.

## C. Procedural Due Process Claims

In his fourth challenge to the constitutionality of the Hatch Act, Molina argued to the district court that "the provisions of § 1502(a)(3) are . . . unconstitutional as applied because they deprive Molina of . . . his liberty and property interests without due process of law." (J.A. 337.) The district court, applying *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 546 (1985), concluded that Molina "had ample due process protections."

Under *Loudermill*, assuming that Molina has a constitutionally protected property interest in his position as Director of the LCCFFC, the Board was required to provide "some kind of hearing" before it terminated him. *Id.* at 546. A public employee "is entitled to oral or written notice of the charges against him, an explanation of the . . . evidence, and an opportunity to present his side of the story." *Id.* Thus, "[t]he essential requirements of due process . . . are notice and an opportunity to respond . . . [and] to present reasons, either in person or in writing, why proposed action should not be taken." *Id.*

We agree with the district court that Molina had ample procedural due process protections. First, Molina was made aware of the Act and the fact that his candidacy violated the Act prior to the filing of any formal complaint. When Molina declared his candidacy in December 2003, the OSC telephoned Molina and advised him that his candidacy violated the Hatch Act. Molina received further notice of the Act's prohibitions in a letter sent February 4, 2004. The letter explained the OSC's basis for its conclusion that Molina's candidacy violated the Act, and included additional information about the Act and its purposes. Further, prior to filing a formal complaint, the OSC gave Molina "an opportunity to come into compliance with the law" by taking action to resign or withdraw his candidacy by February 13, 2004.

Molina also received numerous procedural due process protections after the OSC filed its formal complaint. He requested and received a full hearing before an ALJ, and had an opportunity to respond to the OSC's complaint. Further, when the ALJ concluded that he had violated the Hatch Act and that his removal was appropriate, Molina had the opportunity to petition the full MSPB for a review of the ALJ's decision. Molina also appealed the MSPB's denial of his petition to the district court, and the district court's decision to this Court. As a result, Molina received due process protections at every stage of the proceedings.

On appeal, however, Molina argues that the district court did not address "the essence" of Molina's claim that he should have been informed, prior to taking the job as Director of the

LCCFFC, that he would have to give up his job if he wanted to run for elective office. Appellant Br. 32. As MSPB notes, however, Molina did not raise this argument in the district court, and "this Court will not consider claims that are presented for the first time on appeal nor arguments that are not properly raised below." *Berryman v. Rieger*, 150 F.3d 561, 568 (6th Cir. 1998); *see also United States v. Universal Mgmt., Inc.*, 191 F.3d 750, 758 (6th Cir. 1999) ("Because the issue was not raised in the district court below, Appellants have waived their right to argue the point on appeal.").

Even if this Court did consider the argument, Molina essentially argues that he was unaware of the law prior to accepting his position as Director of the LCCFFC. This Court has held, however, that, even in civil suits, "ignorance of the law" does not excuse the failure to follow it. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561-62 (6th Cir. 2000) (noting that ignorance of the law is not sufficient to warrant equitable tolling and that allowing "an ignorance of the law excuse would encourage and reward indifference to the law"). In addition, as noted above, Molina was made aware of the Act and the fact that his candidacy violated the Act prior to the filing of any formal complaint, and received numerous procedural due process protections both before and after the OSC filed its complaint. The fact that Molina did not learn of the prohibition on candidacy for elective office until he was already serving as Director of the LCCFFC did not violate his due process rights. Accordingly, we affirm the district court's conclusion that the Hatch Act is constitutional as applied to Molina.

## II. Removal as a Consequence of Molina's Hatch Act Violation

Molina argues that the Board abused its discretion in concluding that Molina's violation of the Hatch Act justified his removal. The district court granted summary judgment to the Board after finding that the Board did not abuse its discretion. When a district court upholds on summary judgment an agency's conclusions, this Court reviews the district court's grant of summary judgment *de novo*, while reviewing the agency's decision for abuse of discretion. *See Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474, 480 (6th Cir. 1999).

Under § 1505 of the Hatch Act, removal is the only penalty authorized for violation of the Hatch Act. 5 U.S.C. § 1505. This Court has recognized that the MSPB "has plenary jurisdiction under 5 U.S.C. § 1505 to determine after a hearing . . . 'whether the violation warrants the removal of the officer or employee from his office or employment.'" *Alexander*, 165 F.3d at 480 (quoting *Minnesota Dep't of Jobs and Training v. Merit Sys. Protection Bd.*, 875 F.2d 179, 182 (8th Cir. 1989) (en banc)). Because the decision as to whether removal is warranted is a matter of administrative discretion, a reviewing court will not reverse the Board's decision unless it concludes that the decision constituted an abuse of discretion or was not in accordance with the law. *Id.*

"Whether removal is appropriate depends on the seriousness of the violation." *Id.* at 483. In making this determination, the Board takes into account "all relevant mitigating and aggravating factors," including:

> (1) the nature of the offense and the extent of the employee's participation; (2) the employee's motive and intent; (3) whether the employee received the advice of counsel regarding the activities at issue; (4) whether the employee ceased the activities at issue; (5) the employee's past employment record; and (6) the political coloring of the employee's activities.

*Id.* In his decision, the ALJ determined that Molina's violation of the Hatch Act warranted removal because his "decision to run in the primary constituted a deliberate disregard of the law." (J.A. 78-79.) The Board did not abuse its discretion. As the district court found, the ALJ had a reasonable

basis for concluding that consideration of "all relevant mitigating and aggravating factors" supported removal.

First, as this Court has noted, "candidacy in a partisan political election is a substantial and conspicuous violation of the Hatch Act." *Alexander*, 165 F.3d at 483. Consideration of the relevant factors reveals that all but possibly one factor weigh against Molina. With respect to factor six, Molina's candidacy has "clear political coloring." *Id.* In addition, he decided to become a candidate for elective office, thus extensively participating in the activity at issue. As a result, the first factor weighs against Molina. Further, under factor two, because Molina received notice that his candidacy violated the Act but failed to take measures to comply with the law, Molina's violation was not unintentional. The fourth factor similarly weighs against Molina. Even after receiving several notices that being a candidate while serving as Director of the LCCFFC was contrary to the Act's prohibitions, he did not withdraw his candidacy. Molina also did not receive advice from counsel that his actions were not in violation of the Hatch Act. Finally, with respect to the fifth factor, although it is possible that Molina has a strong employment history, there is no evidence in the record regarding Molina's job performance. Because the ALJ properly applied the test articulated in *Alexander* to conclude that Molina's violation warranted his removal, the Board did not abuse its discretion. *See id.* Accordingly, we affirm the decision of the district court.

## CONCLUSION

The district court's grant of summary judgment in favor of the MSPB is **AFFIRMED**.

_____

**CONCURRENCE**
_____

BOGGS, Chief Judge, concurring. While I agree with the outcome and much of the reasoning in the court's opinion, I do not think that the case is so clearly controlled by *Murphy v. Cockrell*, which occurred in quite a different context. Therefore, I would not assume that this case must be decided so easily on a mere "rational basis" test, and I would obviate the question of the appropriate test by holding that the statute would pass muster even under strict scrutiny.

Molina argues that his case is distinguishable because he is a state employee challenging the application of a federal act. Molina is correct that Congress's interests in regulating state employees through the Act is different than its interest in regulating federal employees. Congress's power over federal employees is derived from its position as employer, as is the power of the state government over state employees. Congress's power over state employees, however, is derived from the restrictions it places on federal funds. That is, the Hatch Act does not authorize the MSPB to remove state employees who violate the Act, it authorizes the MSPB to withhold federal funds if the underlying state employer does not remove employees who violate the Act. 5 U.S.C. § 1506. Thus, Congress's power to influence state employment is derived from its Spending Power and not from its position as employer. *Alexander v. United States Merit Sys. Prot. Bd.*, 165 F.3d 474, 485 (6th Cir. 1999).

Molina argues that state employees affected by the federal act have a greater degree of constitutional protection than do federal employees regulated by the federal government or state employees regulated by the state government. Specifically, Molina requests that this court review § 1502(a)(3) under strict scrutiny. In support, Molina cites *Broadrick*'s dicta that, "[u]nlike ordinary breach-of-the-peace statutes or other broad regulatory acts," statutes prohibiting political activity on the part of employees are "directed, by [their] terms, at political expression which if engaged in by private persons would plainly be protected by the First and Fourteenth Amendments." *Broadrick*, 413 U.S. at 616.

This is a matter of first impression. As the district court noted, previous cases involving state employees have failed to address this distinction and have summarily rejected the state employee's First Amendment arguments. *Molina Crespo v. United States Merit Sys. Prot. Bd.*, 486 F. Supp. 2d 680, 692 (N.D. Ohio 2007) (collecting cases); *see also Palmer v. United States Civil Serv. Comm'n*, 297 F.2d 450, 453-54 (7th Cir. 1962); *Brandon v. Southwest Miss. Senior Serv., Inc.*, 834 F.2d 536, 537 (5th Cir. 1987). The matter is further complicated by the fact that neither the Supreme Court nor this circuit has recognized a fundamental right to be a candidate for elective office. *See Bullock v. Carter*, 405 U.S. 134, 142-43 (1972) ("[T]he Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review."); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989) (refusing to apply strict scrutiny review to an age requirement for candidates for judicial office because age is not a suspect classification and running for office is not a fundamental right). Nevertheless, as the district court acknowledged, even if there is no fundamental right to candidacy, § 1502(a)(3) may still infringe on Molina's First Amendment rights to free speech and free association. *Molina Crespo*, 486 F. Supp. 2d at 692.

Though this case presents the opportunity to address the question of whether we should review the Hatch Act's application to state employees under strict scrutiny, the case's resolution does not require us to do so. Because the challenged provision of the Hatch Act, § 1502(a)(3), would pass constitutional muster even under strict scrutiny, I would affirm the district court without specifically addressing whether applying strict scrutiny is actually required. *See Lyng v. Northwest*

*Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

In order to satisfy strict scrutiny, the Act's restrictions must be "narrowly tailored to promote a compelling Government interest." *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000). Molina concedes that the Act's prohibitions found in § 1502(a)(1) & (2) are "necessary and highly desirable as a matter of public policy in order to ensure the integrity of the political process and to prevent public employees from feeling pressured to work for or contribute money to the political campaigns of their bosses or colleagues." Appellant's Br. 13. Molina attacks § 1502(a)(3), the prohibition on running for elective office, on the grounds that "[t]here are many narrower ways to remove partisan political influence from the administration of federal funds. . . ." Appellant's Br. 25. It is true that under strict scrutiny, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Entm't Group*, 529 U.S. at 813 (citing *Reno v. ACLU*, 521 U.S. 844, 874 (1997)). Unfortunately, Molina does not offer any examples of narrower, but effective, restrictions. Furthermore, Molina's concessions do not accurately describe the purpose of the Hatch Act. The Act's application to state employees is not for the benefit of employees (i.e., shielding employees from pressure to contribute to political campaigns). Rather the purpose is to remove "partisan political influence from the administration of federal funds." *Alexander*, 165 F.3d at 485; *see also Oklahoma*, 330 U.S. at 143 ("The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship."). In addition to limiting actual influence, the Act also inspires confidence in the government by eliminating the appearance of influence. As the Supreme Court explained in *Letter Carriers*, "it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent." 413 U.S. at 565.

The Supreme Court has consistently held that preventing corruption or the appearance thereof is a compelling state interest. *Letter Carriers*, 413 U.S. at 557 ("Such decision on our part would no more than confirm the judgment of history, a judgment made by this country over the last century that it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service, and that the political influence of federal employees on others and on the electoral process should be limited."); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 788-89 (1978) ("Preserving the integrity of the electoral process, preventing corruption, and [sustaining] the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government are interests of the highest importance.") (internal quotation marks omitted); *Buckley v. Valeo*, 424 U.S. 1, 27 (1976) ("Of almost equal concern as the danger of actual *quid pro quo* arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions.").

The Act's prohibition on candidacy, § 1502(a)(3), is narrowly tailored to serve this interest. Without commenting on the limits of what Congress may proscribe, I note that the 1974 amendments to the Hatch Act removed many of the constraints formerly placed on state employees administering federal funds. Prior to those amendments, state and local employees were prohibited from "tak[ing] an active part in political management or in political campaigns." 5 U.S.C. § 1502(a)(3) (1967, superseded). This included:

(1) Serving as an officer of a political party, a member of a National, State, or local committee of a political party, an officer or member of a committee of a partisan political club, or being a candidate for any of these positions;

(2) Organizing or reorganizing a political party organization or political club;

(3) Directly or indirectly soliciting, receiving, collecting, handling, disbursing, or accounting for assessments, contributions, or other funds for a partisan political purpose;

(4) Organizing, selling tickets to, promoting, or actively participating in a fundraising activity of a partisan candidate, political party, or political club;

(5) Taking an active part in managing the political campaign of a partisan candidate for public office or political party office;

(6) Becoming a partisan candidate for, or campaigning for, an elective public office;

(7) Soliciting votes in support of or in opposition to a partisan candidate for public office or political party office;

(8) Acting as recorder, watcher, challenger, or similar officer at the polls on behalf of a political party or a partisan candidate;

(9) Driving voters to the polls on behalf of a political party or partisan candidate;

(10) Endorsing or opposing a partisan candidate for public office or political party office in a political advertisement, a broadcast, campaign literature, or similar material;

(11) Serving as a delegate, alternate, or proxy to a political party convention;

(12) Addressing a convention, caucus, rally, or similar gathering of a political party in support of or in opposition to a partisan candidate for public office or political party office; and

(13) Initiating or circulating a partisan nominating petition.

5 C.F.R. 151.122(b) (1974, superseded).

Under the current version of the Hatch Act, state and local employees have much greater freedom to participate in political campaigns and to associate publically with candidates and political parties. The Act's remaining prohibition on candidacy, however, is at the core of the Act's purpose and cannot be further narrowed without eviscerating the force of the law. The *appearance* of partisan influence cannot be avoided when administrators of federal funds are allowed to declare themselves publically as partisan candidates. Congress pared the Act's restrictions on covered state and local employees to a minimum; the challenged restriction is clearly narrowly tailored. Accordingly, I would reject Molina's First Amendment challenge on the grounds that the Act would pass constitutional muster even under strict scrutiny.