NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0919n.06

No. 14-5337

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALICE M. SULLIVAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; GRIFFIN, Circuit Judge; and CARR, District Judge.[*]

GRIFFIN, Circuit Judge.

Alice M. Sullivan received an adverse decision by an Administrative Law Judge (ALJ) denying her application for Social Security Disability Insurance Benefits (DIB). The Appeals Counsel affirmed the ALJ's decision, as did the district court. Sullivan now appeals to this court. For the reasons set forth below, we affirm.

I.

First, Sullivan claims that the "substantial evidence" standard used by Article III courts to review decisions of ALJs in DIB cases, *see* 42 U.S.C. § 405(g), is unconstitutional. Specifically, Sullivan claims that because it is more difficult for poor people than for affluent people to obtain the medial records necessary to establish a disability claim, the standard "imposes different

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

burdens on the poor versus the rich" and thus unconstitutionally discriminates on the basis of economic status. This claim receives its own section of Sullivan's brief, but persists throughout the other sections of the brief as well. Although Sullivan does not specify which provision of the constitution the substantial evidence standard offends, from her arguments it is clear that Sullivan's theory is that the substantial evidence standard violates the principles of equal protection enshrined in the Fifth Amendment's due process clause. *See United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013).

Sullivan did not raise this claim before the district court. Although Sullivan did briefly aver that the ALJ's denial of benefits violated her due process rights, her argument in the district court was that some of the ALJ's findings were conclusory or lacking a factual basis in violation of *Goldberg v. Kelly*, 397 U.S. 254, 260–66 (1970), which held that the due process clause of the Fourteenth Amendment requires that recipients of government benefits receive an evidentiary hearing prior to the termination of those benefits. She never argued that the substantial evidence standard discriminated on the basis of economic status.

Claims raised for the first time on appeal are forfeited. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

> Two main policies justify this general rule. First, the rule eases appellate review "by having the district court first consider the issue." *Foster v. Barilow,* 6 F.3d 405, 409 (6th Cir. 1993). Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal. *See Novosteel SA v. United States,* 284 F.3d 1261, 1274 (Fed. Cir. 2002).

*Id.* The only exceptions to this rule are in "exceptional cases . . ." or when enforcing the forfeiture rule would produce a "plain miscarriage of justice." *Id.* (citations omitted). Because Sullivan did not raise her equal protection claim in the district court, we conclude she has forfeited it on appeal. Nor do we think this is an "exceptional case[]" or that enforcing the

forfeiture rule here would produce a "plain miscarriage of justice," *id.*, and Sullivan offers no argument to the contrary. Accordingly, we decline to review this claim.

Moreover, even assuming Sullivan had not forfeited this claim, she would not be entitled to relief. The Supreme Court "has held repeatedly that poverty, standing alone is not a suspect classification" for equal protection purposes. *Harris v. McRae*, 448 U.S. 297, 323 (1980); *Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*, 547 F.3d 651, 660 (6th Cir. 2008) ("[A] class of less wealthy individuals is not a suspect class" and thus "does not trigger heightened scrutiny"). Sullivan advances no reason to depart from this principle.

## II.

Next, Sullivan challenges several of the ALJ's conclusions. We find no error in the ALJ's decision.

The ALJ's decision followed the standard five-step analysis prescribed by the Social Security Act:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. [*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)] (*citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)).

> Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)).

> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).

> Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

> For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott,* 905 F.2d at 923.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). At the first step, the ALJ

concluded that Sullivan met the insured status requirements of the Social Security Act through

June 30, 2014, and had not engaged in substantial gainful activity since December 1, 2007. At

step two, the ALJ found that Sullivan "had the following severe impairments: coronary artery

disease status post two-vessel coronary artery bypass grafting with benign hypertension, ongoing

tobacco abuse, and obesity (20 CFR 404.1520(c) and 416.920(c))." At the third step, the ALJ

determined that Sullivan did not meet or equal one of the listed impairments in the regulations.

Next, the ALJ assessed Sullivan's residual functional capacity (RFC), which is defined as the

"most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. 404.1545(a)(1).

The ALJ determined that Sullivan

> has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that she may sit 8 hours, stand 2 hours, and walk one hour; she
> needs the option to sit and stand, she may occasionally bend, stoop, push, pull,
> and reach overhead but never kneel . . . crouch or crawl. She will need to
> alternate positions every 35 to 45 minutes and may occasionally be able to grip
> with her hands . . . .

In making her RFC determination, the ALJ

> [p]lace[d] minimal weight on the . . . opinion of Tullio Emanuele,
> M.D.[, Sullivan's treating physician], who stated that due to her coronary artery
> bypass graft surgery, she has not been able to work on jobs which require frequent
> lifting. This opinion does not have controlling weight . . . because it was not
> consistent with [Dr. Emanuele's] own medical records. For example, [Sullivan]
> exhibited normal signs on her June 2009 visit [to Dr. Emanuele] . . . . July 2010
> testing found similar results. In addition, while [Sullivan] has a treating
> relationship with Dr. Emanuele since 2007, they have had limited contact with
> one another, without visits in 2008 and 2011. Similarly, the limitations [proposed
> by Dr. Emanuele] are not specific and only preclude frequent lifting, not
> specifying an amount. [Sullivan] quoted Dr. Emanuele in saying she could lift
> over 10 pounds. [Sullivan] also stated that she was able to work provided certain
> accommodations that when named to the vocational expert, were attainable in
> [certain positions]. Because [Sullivan] does not exhibit the extreme exacerbations
> in the record that Dr. Emanuele alleged in his medical source statement, his
> opinion is not supported by nor is consistent with the overall medical evidence of
> record.

At the fourth step, the ALJ determined that Sullivan was unable to do past relevant work. At the fifth step, however, the ALJ determined that, based on Sullivan's age, education, work experience and RFC, "there are jobs that exist in significant numbers in the national economy that [Sullivan] can perform." The ALJ summarized the testimony of a Vocational Expert (VE):

> The [VE] testified that . . . [a hypothetical individual with Sullivan's age, education, work experience, and RFC] would be able to perform the requirements of representative occupations such as call out operator . . . [for which there were 2,900 jobs in Kentucky and 180,000 nationwide]. The hypothetical person could also be a surveillance systems monitor . . . [for which there were 5,000 jobs in Kentucky and 200,000 nationwide]. Finally, the hypothetical person could perform the duties of an investigator . . . [for which there were 4,600 jobs in Kentucky and 211,000 nationwide].

The ALJ thus concluded that Sullivan was not disabled.

When confronted, as we are here, with an appeal under 42 U.S.C. § 405(g), we "must affirm the [ALJ's] conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Indeed, "[i]f the [ALJ's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

### III.

Sullivan first challenges the ALJ's RFC determination, arguing that she improperly discounted the opinion of Dr. Emanuele. We disagree.

An ALJ should "give more weight to the opinion of a [medical] source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. § 404.1527(c)(1).[1] Under the so-called "treating physician rule," the ALJ "'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). Along those lines, "'[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)). If the opinion of a treating source is not given controlling weight by the ALJ, the ALJ "'must apply' specified factors in determining what weight to give the opinion." *Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(c)(2)). These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(c)(2)). And, if the ALJ gives the treating source's opinion other-than-controlling weight, the ALJ must give "'good reasons'" for having done so. *Hensley*, 573 F.3d at 267 (citing 20 C.F.R. § 1527(c)(2)).

---

[1]Some of our opinions quoted or cited 20 C.F.R. § 404.1527(d), the previous version of the C.F.R. That C.F.R. has since been revised, and, for clarity's sake, we refer to the current version herein.

Here, the ALJ declined to give Dr. Emanuele's opinion controlling weight because his opinion was not supported by the other evidence in the record. We agree. As the ALJ correctly noted, Dr. Emanuele's own records indicated that in 2009 and 2010, Sullivan's heart tested normally. In 2010, she denied any chest pain, shortness of breath, dizziness, palpitations, myalgias, and her heart rate was normal. This court has previously held that it is proper for an ALJ to give a treating physician's opinion less-than-controlling weight where a claimant is "unable to direct this court to any portion of the [treating physician's] records which support" the treating physician's ultimate opinion. *Walters*, 127 F.3d at 530. In short, Dr. Emanuele's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is thus not entitled to controlling weight. *Blakley,* 581 F.3d at 406.

The ALJ also properly considered the frequency of Sullivan's treating relationship with Dr. Emanuele, one of the appropriate factors to consider in denying a treating physician's opinion controlling weight. *Id*. The ALJ correctly observed that Sullivan's treating relationship with Dr. Emanuele was sporadic—Sullivan did not see Dr. Emanuele in 2008 or 2011.

For these reasons, we conclude that the ALJ did not err in assigning less-than-controlling weight to Dr. Emanuele's opinion in making her RFC determination. The ALJ's determination that Dr. Emanuele's opinion was inconsistent with the other evidence in the file was supported by substantial evidence.

IV.

Next, Sullivan argues that the ALJ did not rely on the VE's testimony. We disagree.

Sullivan testified before the ALJ that she had trouble gripping objects due to swelling in her hands. Sullivan asserts that the VE testified that such limitations on gripping would "rule out all the jobs" and therefore asserts that the VE testified that there were no jobs a hypothetical

person with Sullivan's impairments could perform  This is not what the record reflects.  The VE's statement about "all the jobs" was made in the context of describing a specific job:  callout operator.  Almost immediately after he gave his answer, that "occasional gripping would rule out all the jobs," he amended his testimony, stating "I made a mistake here.  The callout operator could still be performed with occasional gripping."  Accordingly, Sullivan's characterization of the VE's testimony is not supported by the record.

To the contrary, the VE testified that there were a number of jobs widely available in the local, regional, and national economy that a hypothetical person with Sullivan's physical limitations could perform.  Specifically, the VE testified that someone with Sullivan's limitations could be a callout operator (for which there were 2,900 jobs in Kentucky, and 180,000 in the national economy), a surveillance systems monitor (for which there were 5,000 jobs in Kentucky and 200,000 in the national economy), or an investigator (for which there were 4,600 jobs in Kentucky and 211,000 in the national economy).  Thus, the VE's testimony constituted substantial evidence to support the ALJ's finding that Sullivan was capable of performing a significant number of jobs in the local and national economy because it was based on a hypothetical question and accurately portrayed Sullivan's physical limitations.  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

To the extent Sullivan argues that the ALJ erred by finding her testimony not credible because it was inconsistent with the medical evidence, we disagree.  In cases such as this, we "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility[,]" as those are issues for the ALJ to decide.  *Walters*, 127 F.3d at 528 (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Sullivan asserts that the ALJ's credibility finding is unsupported because her testimony as to the severity of her impairments was

corroborated by the affidavit of Judy Hittison, Sullivan's former employer. Hittison averred, consistent with Sullivan's testimony before the ALJ, that Sullivan had problems lifting heavy objects due to her heart condition, had a memory problem, could not grip, could not stand for more than fifteen minutes at a time, and could not sit for very long. However, Sullivan did not submit Hittison's affidavit to the ALJ; rather, this evidence was submitted for the first time to the Appeals Council after the ALJ's decision. We have "repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Accordingly, we decline to review this evidence.

V.

For the foregoing reasons, we affirm.