NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0088n.06
Filed: February 3, 2009

No. 06-2010

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JERRY ABNET,

      Plaintiff-Appellant,

        v.

UNIFAB CORPORATION,

      Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of Michigan
at Kalamazoo

_____/

**Before:**     **GUY, CLAY, and COOK**, **Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**     Plaintiff Jerry Abnet, a former long-term employee of defendant Unifab Corporation (Unifab), appeals the district court's entry of summary judgment for defendant on plaintiff's age discrimination and retaliation claims brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2202(a). Agreeing with the district court that summary judgment for defendant was appropriate on all claims, we affirm.

## I.

    Plaintiff began his employment with Unifab, a metal fabricator, in 1966. He had served in the position of purchasing agent for Unifab for over 20 years when he was laid off

in February 2004. Plaintiff, a high school graduate who completed some college course work, was then 66 years old and had a salary of approximately $30,000 per year. Plaintiff asserts that although he had historically received only good performance reviews, survived multiple layoffs due to the "indispensable" nature of his job, and was told by management that he could "possibly work for Unifab into his 70's," the company improperly replaced him with a 23-year-old Western Michigan University graduate, by the name of Robert Payne, who was given a salary of $38,000 per year.

Unifab had experienced a downturn in business in the previous several years, reducing its workforce from 69 employees in 2000 to 25 employees by January 2005. In 2003, independent contractor Robert Seely was hired to function as Unifab's general manager, as plaintiff himself describes, to "obtain financing, introduce ISO 9000, and improve the company generally." Achieving ISO 9000 certification is an involved process requiring the implementation of international standards to assure product quality control. Unifab had unsuccessfully attempted to implement an ISO 9000 certification system in 2002, which the parties do not dispute was being required by a growing number of customers.

Seely had ideas about how to improve things at Unifab. He asked Unifab's owner, Steve Schroen, about bringing someone new to the company. Seely began talking to Payne about working for Unifab in early 2004. Seely used the services of a firm called Caliper Human Strategies, Inc., to assess Payne's potential for Unifab.[1] Payne's first day on the job

---

[1]Caliper created a "Management Dynamics Profile" of Payne, in which it concluded "[t]he organization is looking for a change agent who can constantly shake up the status quo, so with these strengths and concerns in mind, we consider Mr. Payne matched, with reservations, to Purchasing Agent Position with Unifab Corporation."

was in June of 2004, approximately five months after plaintiff was laid off. During his first week on the job, Payne spent a day in each of several different departments to better understand Unifab's operations. Payne was given business cards indicating a title of Purchasing Agent.

Unifab states that plaintiff's duties were divided among five different employees at the time of the layoff, and that Payne may have ultimately assumed purchasing functions as a part of his job, but it was along with many other responsibilities, such as supervising production employees and drafting a policy manual on product quality. Unifab asserts that it hired Payne to "lead Unifab through an ISO 9000 certification process, implement new processes, and perform a variety of other tasks." Payne did assist Unifab in achieving its ISO 9000 designation, which it received while Payne was in Unifab's employ.

Plaintiff filed suit in district court in February 2005, alleging that Payne was hired to fill his position, and that this constituted age discrimination. Payne left Unifab in March 2005. Late in the day of March 9, 2005, counsel for Unifab faxed a letter of that date to the office of plaintiff's counsel, offering to recall him in a temporary (anticipated to be one month in duration and possibly longer) part-time purchasing position, without benefits, at a rate of $15 per hour. The letter stated that

> [t]his employment offer should not be construed in any way as an admission of liability, or a recognition of the merits of Mr. Abnet's claim against Unifab. It is being offered simply because Unifab has a short-term need for someone with Mr. Abnet's skills and experience. The position is available immediately. I would appreciate it if you would pass this proposal along to Mr. Abnet immediately, and I would ask him to correspond directly with Unifab by the end of business on Thursday, March 10. If we do not hear from him by that time Unifab will assume that he is not interested and will look for someone

else to fill the position. In the event that Mr. Abnet is unable to correspond with Unifab tomorrow, I would still urge him to communicate with Unifab in case the position is still open.

By the time plaintiff had learned of the letter in the day or two after it was sent, his wife had already called Unifab about the position, to learn that it had been filled. Defendant had recalled Rush McDaniel, an individual over 70 years old, to serve as purchasing agent. The offer extended to McDaniel did not contain a time limit on acceptance of the position or reference that the position would be temporary.

After Unifab rehired McDaniel, plaintiff amended his complaint to include a claim of retaliation, asserting that the "offer" made to the plaintiff was "designed to induce Mr. Abnet not to accept the position," and that the offer made to McDaniel was "without any of the onerous terms, and it did not indicate that the position would be short term." He also claimed that "an agent of the defendant told Mr. Abent [sic] that if he had not involved lawyers in his dispute with Unifab, he would be working there rather than [McDaniel]."

Unifab had moved for summary judgment before plaintiff amended his complaint, then supplemented the motion after the amended complaint was filed. The district court granted the motion and entered judgment for defendant as to all of plaintiff's claims. In its order, the district court noted that "[p]laintiff's affidavit claiming to have done the same duties as Payne is unsworn and cannot be considered by the Court." Plaintiff filed a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e), which the district court denied, and then

filed his notice of appeal on July 25, 2006.  The notice listed only the "order denying motion for reconsideration," entered July 12, 2006, as the order from which appeal was taken.[2]

## II.

As noted above, plaintiff has appealed only the district court's denial of his motion for reconsideration.  The district court may grant reconsideration under Fed. R. Civ. P. 59(e) for any of four reasons:  (1) because of an intervening change in the controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice.  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  Where a motion for reconsideration seeks review of a district court's determination on a motion for summary judgment, we review that legal determination *de novo* rather than for an abuse of discretion.  *Greenwell v. Parsley*, 541 F.3d 401, 403 (6th Cir. 2008) (citing *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (1991)).  Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

## A.    Age Discrimination Claims

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff may establish a claim under the ADEA with either direct or circumstantial evidence of discrimination on the basis of age.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

---

[2]Plaintiff's motion for reconsideration asserted (1) that plaintiff *had* submitted a signed affidavit, and (2) generally rehashed plaintiff's arguments on the discrimination and retaliation claims.

Plaintiff attempted to establish his age discrimination claims through the use of indirect evidence. Under the familiar *McDonnell Douglas* methodology, to establish a *prima facie* case of age discrimination, for both the federal and state claims asserted here, a plaintiff first has to show that (1) he belonged to a protected age class; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) he was replaced by a younger individual.[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). *See also Mick v. Lake Orion Cmty. Sch.*, 706 N.W.2d 725, 726 (Mich. 2005) (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001)).

Once the plaintiff makes his *prima facie* case of age discrimination, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). After such evidence is produced, the burden of production shifts back to the plaintiff to show that the employer's articulated reason is only pretext for intentional discrimination. *Id*.

With respect to plaintiff's *prima facie* case, there is no dispute that plaintiff satisfied the first three factors. Concerning the fourth factor, the district court determined that plaintiff was not replaced by Robert Payne. It found that "although Payne functioned as a

---

[3]In a reduction in force case, the replacement requirement can be satisfied by presenting additional direct, circumstantial, or statistical "evidence that indicates that an employer singled out the plaintiff for adverse treatment for impermissible reasons." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). *See also Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Although plaintiff suggests that he satisfies this requirement, he points to no real evidence that he was singled out for layoff on account of his age.

purchasing agent, he also had many other significant responsibilities." The district court found that upon assuming his position with Unifab, Payne's focus was getting the company ISO 9000 certified. Once that was accomplished, the district court found that Payne's time was still "spread amongst several tasks beyond purchasing," whereas "Plaintiff's duties were limited to purchasing raw materials and managing inventory."

Plaintiff paints a different picture of Payne's job. Plaintiff notes that Seely had described the job for Payne as "purchasing agent," that the Unifab payroll indicated Payne's job was "purchasing agent," that Payne's business cards stated "purchasing agent," and that the very first time Payne's job was not described as "purchasing agent" was in response to plaintiff's administrative discrimination complaint. Plaintiff points out that beginning in the fall of 2004, Unifab used a consultant to train its employees, including Payne, on the ISO 9000 system, suggesting that plaintiff could also have been trained on the system.

In determining that plaintiff had not made his *prima facie* case, the district court relied on the case of *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) for the proposition that replacement does not occur where an employer assigns the plaintiff's duties to another employee to perform in addition to other duties. *See also Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (1990). As noted above, the district court determined it could not consider plaintiff's affidavit, generally claiming that he had performed all of the duties described by Payne in his deposition, with the exception of "assembly supervision," for the reason that it was unsworn. Plaintiff explained that the error was clerical and offered a sworn version of the affidavit with his motion for reconsideration.

Whether or not plaintiff survives the *prima facie* hurdle of the McDonnell Douglas test, we are convinced that, even taking plaintiff's affidavit into consideration, summary judgment was appropriate.[4] Plaintiff has not produced evidence sufficient to create a question of material fact concerning whether the reason given for his termination was pretext for discrimination. The reason given by Unifab for plaintiff's termination is that it had a financial need to lay off several employees in 2003 and 2004, including plaintiff, because reduced customer orders eliminated the need to have a full-time purchasing agent.[5] Although plaintiff points to statements made by Seely such as a need to bring in "new blood," or a "change agent," as evidence of age discrimination, we do not find this to be the case. The evidence shows that Unifab was trying to implement new programs and processes, which plaintiff's own evidence supports. The "change agent" comments are consistent with this plan, and it is evident that Payne, at least initially, cross trained in the different departments and performed a variety of work for Unifab.

Plaintiff argues that testimony given by Seely and Unifab's owner, Steve Schroen, with regard to hiring someone to implement ISO 9000, "lean manufacturing," and a manufacturing management concept called "TRIZ," was false.[6] He contends that Payne himself had to be trained on the ISO 9000 system, and did not follow through with some of

---

[4]As noted by the district court, plaintiff's general assertion does not address specifics given by Payne, such as that he spent "between 5 and 15 percent of his time . . . implementing the lean manufacturing and production techniques he learned in college."

[5]Generally rebutting the allegations, Unifab points to the average age of its employees, stating that as of the date this lawsuit was filed, 22 of 26 employees were 45 and older, and 58% were 55 and older.

[6]This stands for "Teoriya Resheniya Izobretatelskikh Zadatch," an engineering problem-solving methodology.

the other planned changes. He asserts that this demonstrates that the asserted economic reasons behind his own layoff were "clearly a subterfuge." In fact, he argues this "fabrication" alone should allow his case to go to a jury, citing *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997), a case not on point here.

Plaintiff also discusses Payne's inability to implement some of the new manufacturing concepts, and evaluations of Payne showing deficiencies in Payne's job performance. Whether Payne was successful for Unifab, however, does not impact our decision on whether plaintiff's termination was motivated by age discrimination. We are convinced that plaintiff did not raise a genuine issue of material fact with respect to pretext on the part of Unifab, and agree with the district court that summary judgment for Unifab was appropriate on this claim.

## B.       Retaliation Claims

*McDonnell Douglas* also guides us through our consideration of plaintiff's retaliation claims. A plaintiff's *prima facie* case of retaliation under the ADEA is established by showing

> (1) that [he] engaged in a protected activity; (2) that the defendant had knowledge of [his] protected conduct; (3) that the defendant took an adverse employment action towards [him]; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (alteration in original) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) (internal citation omitted)). In *Mickey*, we noted that the Michigan Court of Appeals has held that "[t]o establish causation, the plaintiff must show that his participation in activity protected by the [EL]CRA was a 'significant factor' in the employer's adverse employment action, not

just that there was a causal link between the two." *Id*. n.2 (alteration in original) (quoting *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001)).

Plaintiff's retaliation claim, citing to his general allegations, states that Unifab's "refus[al] to re-hire him" was the result of his lawsuit against Unifab and violated the ADEA and the ELCRA. Recapping his general allegations, he states that (1) the terms of the part-time offer made to him were "unreasonable," (2) the offer then made to another former employee did not contain such "onerous terms," and (3) a representative of defendant told him that if he had not brought lawyers into his dispute with Unifab, he would be working there instead of McDaniel.[7]

The district court determined that plaintiff did not make out a *prima facie* case of retaliation. It found that the action of which plaintiff complained, *i.e.*, the "unreasonable offer" of employment made to plaintiff on March 9, 2005, did not satisfy the requirement that plaintiff demonstrate adverse employment action taken against him by Unifab.[8]

---

[7]This evidence does not support plaintiff's claims; in fact, in deposition plaintiff agreed that the statement by Unifab employee Linda Palmetier referenced only the obstacle of communicating through counsel after plaintiff filed his lawsuit:

> Q:    When Linda made a comment to you that you described as saying something to the effect of, if lawyers weren't involved, you'd be back at Unifab, was she talking about this letter?
>
> A:    Yes, I believe so.
>
> Q:    Okay. She wasn't suggesting to you that Unifab was retaliating against you because of your lawsuit, was she?
>
> A:    No.

[8]In making its ruling, the district court considered cases including *Cartwright v. Lockheed Martin Utility Services. Inc.*, 40 F. App'x 147, 157 (6th Cir. 2002) (finding no adverse employment action, "because plaintiff was on disability leave and there is no evidence that he ever sought but was denied re-employment"),

We agree that plaintiff cannot establish his *prima facie* case by relying on the asserted sham job offer. Clearly, the offer alone could not be considered adverse. Adding Unifab's act of stating that the rehire offer was likely temporary, was likewise not an adverse employment action given that the job was at-will in any event, and plaintiff was working part-time elsewhere at that point. We also agree that the 24-hour window is immaterial, especially in light of the fact that plaintiff testified at deposition that he would not have accepted the position:

> Q:    All right. And is it true you would not have been interested in leaving that job to take a job as described here at Unifab for a month?
>
> A:    Not for one month, no.

Furthermore, after the time window had closed, on March 11, 2005, Unifab wrote a facsimile letter to counsel for plaintiff, stating that the position had to be filled and that if plaintiff was not available immediately, the "position will be offered to someone else." There is no evidence that plaintiff responded to this communication with any interest in the position. We agree with the district court that plaintiff, providing no evidence that the job offer was an adverse employment action, failed to establish a *prima facie* case.

**AFFIRMED**.

---

and found that "[t]hus, in order for any adverse employment activity to occur, Plaintiff needed to contact Defendant seeking to be rehired (not the other way around)." The district court also noted that adverse action might have occurred if plaintiff had made a counter-offer to defendant, stating "only then would Defendant have been poised to take an adverse employment action against Plaintiff." Plaintiff enumerates and specifically objects to these "rulings" of the district court in his claim on appeal concerning the retaliation cause of action. We need not separately address plaintiff's objections to these "conclusions" of the district court, given our determination here.